David N. Lake, Esq., State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE,**
  **A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 788-5199
david@lakelawpc.com

Attorneys for Plaintiff

ADR

E-FILING
**FILED**

JUL 0 1 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

PSG

CV11-03269

| | |
|---|---|
| DEBRA SALZMAN, derivatively on behalf of the Nominal Defendant, | Case No. _____ |
| Plaintiff, | **SHAREHOLDER DERIVATIVE COMPLAINT FOR:** |
| v. | **1) CONTRIBUTION PURSUANT TO SECTIONS 10(B) AND 21D OF THE EXCHANGE ACT;** |
| CAROL BARTZ and JERRY YANG, | |
| Defendants, | **2) BREACH OF FIDUCIARY DUTY AND WASTE; and** |
| and | **3) BREACH OF THE DUTY OF FULL DISCLOSURE AND COMPLETE CANDOR** |
| YAHOO! INC., a Delaware corporation, | |
| Nominal Defendant. | **JURY TRIAL DEMANDED** |

Complaint

1       Plaintiff, by her attorneys, submits this shareholder's derivative complaint against the

2  individual defendants named herein.  The allegations are asserted on information and belief

3  after due investigation of counsel, except as to those matters which relate to plaintiff and her

4  own acts, which are asserted on personal knowledge.

5                              **NATURE OF THE ACTION**

6      1.      This is a shareholder's derivative action on behalf of Yahoo! Inc. ("Yahoo"

7  or the "Company") against its Chief Executive Officer, defendant Carol Bartz and co-

8  founder Jerry Yang (together, the "Individual Defendants"), for breach of fiduciary duty

9  and corporate waste.

10      2.     On May 10, 2011, Yahoo shareholders learned for the first time that the

11  Company's $1 billion investment in a strategic partnership with Alibaba, China's

12  largest e-commerce company, likely had been severely impaired by the claimed

13  misappropriation of Alibaba's most valuable asset, Alipay, an e-commerce payment

14  system, from Alibaba to another private company controlled by Alibaba's Chairman,

15  Ma. On this news, over the next several days the trading price of Yahoo common

16  stock declined by over 10%, wiping out $3 billion in market capitalization. The

17  Individual Defendants reportedly were aware of Ma's planned transfer of Alipay, failed

18  to prevent its occurrence without due compensation, and then concealed the entire

19  episode from Yahoo shareholders for six months.

20      3.    On June 6, 2011, a class action complaint was filed against Yahoo, Carol

21  Bartz and Jerry Yang in the United States District Court for the Northern District of

22  California, alleging violation of the federal securities laws arising out of the Alipay

23  debacle, entitled *Bonato v. Yahoo! Inc. et al.,* 11-cv-2732 (CRB).  According to the Class

24  Action Complaint, during the Class Period (April 19, 2011 through May 13, 2011),

25  defendants issued materially false and misleading statements regarding the Company's

26  business and financial results. Specifically, defendants failed to disclose that an important

27  corporate asset in China had been transferred at much less than market value.  As a result

28

1  of defendants' allegedly false statements, Yahoo's stock traded at artificially inflated prices

2  during the Class Period, reaching a high of $18.65 per share on May 6, 2011.

3        4.      On May 10, 2011, Yahoo issued its Quarterly Report on form 10-Q for the

4  period ending March 31, 2011. On page 8, it is stated:

5        To expedite obtaining an essential regulatory license, the ownership of
        Alibaba Group's online payment business, Alipay, was restructured so that
6        100 percent of its outstanding shares are held by a Chinese domestic
        company which is majority owned by Alibaba Group's chief executive
7        officer. Alibaba Group's management and its principal shareholders, Yahoo!
        and Softbank Corporation, are engaged in ongoing discussions regarding the
8        terms of the restructuring and the appropriate commercial arrangements
        related to the online payment business.
9

10       5.      On May 12, 2011, Yahoo issued a press release which stated:

11

12       Yahoo! Inc. (NASDAQ:YHOO), issued the following statement in response
        to recent media reports regarding the timing of the restructuring of Alipay:
13
        On March 31, 2011, Yahoo! and Softbank were notified by Alibaba Group of
14       two transactions that occurred without the knowledge or approval of the
        Alibaba Group board of directors or shareholders. The first was the transfer
15       of ownership of Alipay in August 2010. The second was the deconsolidation
        of Alipay effective in the first quarter of 2011.
16
        Yahoo! disclosed this restructuring in its 10-Q after discussions with Alibaba
17       Group and obtaining a better understanding of this complex situation.

18       Yahoo! continues to work closely with Alibaba and Softbank to protect
        economic value for all interested parties. We believe ongoing negotiations
19       among all of the parties provide the best opportunity to achieve an outcome
        in the best interest of all stakeholders.
20
         6.      On May 13, 2011, Alibaba Group issued a press release which stated
21
22  in relevant part:

23       **Alibaba Group Clarification with Respect to Alipay Status and Related
        Statements by Yahoo!**
24
        HONG KONG--Alibaba Group management has taken actions to comply
25       with Chinese law governing payment companies in order to secure a license
        to continue operating Alipay. The Alibaba Group board discussed at
26       numerous board meetings over the past three years the impending imposition
        of new regulatory requirements on the online payment industry, including
27       ownership structures, as they were being developed in China, and was told in
28

a July 2009 board meeting that majority shareholding in Alipay had been transferred into Chinese ownership. The actions taken by Alibaba Group management to comply with the licensing regulations and to ensure continuation of operations are in the best interests of the company and its shareholders. The continued operation of Alipay is essential to the preservation and enhancement of the value of Alibaba Group's businesses such as Taobao, as Alipay is the payments platform for e-commerce in these businesses.

7.     On May 15, 2011, Yahoo issued a press release entitled "Joint Statement from Alibaba Group and Yahoo! Inc. Regarding Alipay," which stated in part:

Yahoo! Inc. and Alibaba Group issued the following statement regarding Alipay:

"Alibaba Group, and its major stockholders Yahoo! Inc. and Softbank Corporation, are engaged in and committed to productive negotiations to resolve the outstanding issues related to Alipay in a manner that serves the interests of all shareholders as soon as possible."

8.     According to news reports, Alibaba received only $46 million for Alipay's assets, which securities analysts valued in the billions.   There is strong circumstantial evidence that the Individual Defendants did not inform the Yahoo Board of the need for a change of control in the ownership of Alipay, and did not inform the Yahoo Board that the transfer had in fact been effected long before March 2011, although the Individual Defendants were aware of that fact. Given Alipay's obvious value to the Company, the fact that Defendant Wang was on the Alibaba Board of Directors, and the belated Yahoo disclosures all indicate that Yahoo Management was not forthcoming with the public and the Yahoo Board.

9.     Both Individual Defendants had motive to conceal the facts. Yang, a co-founder, did not want to be perceived as a fool for having recommending the Company's expansion into Asia, when he was the Chief Executive Officer. Defendant Bartz did not want a major crisis impinging on her efforts to turn the Company around, but hoped that she could announce the transfer and fair compensation for Alipay to avoid a market melt-down and save her position. Given the magnitude of the disaster presently affecting the

1  Company, both Defendants have been strangely quiet which also strongly suggests that
2  they have not been completely forthcoming.

3       10.    The Class Action alleges that Yahoo management had been informed on
4  March 31, 2011, at the latest, that Alipay's structure had been shifted from Alibaba,
5  reducing the value of Yahoo's investment in Alibaba by billions of dollars.   Chinese
6  regulations regarding foreign ownership had been anticipated to change as far back as
7  2009, which would require Yahoo or Alibaba to divest themselves of Alipay, but Yahoo
8  had failed to develop a strategy to recover the value it had in Alibaba.

9       11.    The Yahoo board of directors ("Board") has not, and will not commence
10 litigation against the individual defendants, let alone vigorously prosecute such claims,
11 because the Company faces a substantial likelihood of liability in the Class Action, and the
12 Yahoo Board cannot at the same time be defending the Class Action on one hand and
13 seeking damages from the individual defendants. Since this dichotomy sterilizes the Yahoo
14 Board from fairly addressing a demand, a pre-suit demand upon the Yahoo Board is a
15 useless and futile act, and plaintiff may bring this action to vindicate Yahoo's rights against
16 the two wayward fiduciaries.

17      12.    Yahoo management, in defendants Bartz and Yang, have refused to fully
18 explain what has occurred, or comment on what the outcome will be. While claiming that
19 management knew nothing of what was going on with Alipay, the language from the Form
20 10-Q indicates that the transfer of the affiliate was a necessary and anticipated act. Further,
21 since defendant Yang is a long time member of the Alibaba Board, it strains credulity for
22 Yahoo management to claim that they knew nothing of the key developments, given that it
23 was their job to know what was occurring, and that Chinese regulations required a transfer
24 of Alipay. What is clear is that the innocent shareholders are being asked to foot the bill for
25 this gross breach of the conduct by the Individual Defendants.

26      13.    Plaintiff brings this action to seek recompense from the fiduciaries to the benefit
27 of the Company for this debacle which has grievously injured the Company by reducing its
28 assets by potentially billions of dollars.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C 1331 (federal question jurisdiction) insofar as this action arises under both Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. 78j(b), pursuant to which there is a private right of action for contribution, and Section 21D of the Private Securities Litigation Reform Act, 15 U.S.C. 78u-4, which governs the application of any private right of action for contribution asserted pursuant to the Exchange Act.  Prior to Congress having enacted an express provision for contribution under Section 21D of the Exchange Act, the United States Supreme Court recognized that a federal cause of action existed for contribution pursuant to Section 10(b) of the Exchange Act and Rule 10b-5. *See Musick, Peeler & Garrnett v. Employers Insurance of Wausau,* 508 U.S. 286 (1993). Thus, pursuant to federal statutory law and Supreme Court authority, this Court has original federal question jurisdiction over the Federal contribution claim alleged herein. This Court also has subject matter jurisdiction over the pendent state law claims asserted herein pursuant to 28 U.S.C. 1367 (supplemental jurisdiction), since this statute provides that the district court has supplemental jurisdiction over all other claims where, as here, they are so related to claims in the action within the original jurisdiction of the Court, that they form part of the same case or controversy.  This Court also has jurisdiction over this action pursuant to 28 U.S.C. 1332 (Diversity of Citizenship).  Plaintiff is a citizen of New York and each defendant is a citizen of a state other than New York. The matter in controversy is in excess of $75,000, exclusive of interest and costs.

15.     This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b).  A number of the wrongful acts and practices contained of herein occurred in this District. Nominal defendant Yahoo maintains its headquarters in this District.

17.     In connection with the violations of law alleged herein, the defendants used the means and instrumentalities of interstate commerce including the United States mail,

interstate wire and telephone facilities, the facilities of the national securities markets and the Internet to distribute the false and misleading statements complained of herein.

### PARTIES

18.     Plaintiff Debra Salzman ("Plaintiff") is, and was at all relevant times, a shareholder of nominal defendant Yahoo and a citizen of the State of New York.

19.     Nominal defendant Yahoo is a Delaware corporation, with its executive offices located at 701 First Avenue, Sunnyvale, California 94089. According to its SEC filings, Yahoo is a digital media company that delivers personalized digital content and experiences, across devices and around the globe, to vast audiences. Yahoo is a citizen of the states of California and Delaware.

20.     Defendant Carol Bartz ("Bartz") has been Chief Executive Officer of Yahoo since 2009. At all relevant times, Yahoo's most valuable corporate asset, accounting for as much as two-thirds of its entire market capitalization according to some financial experts, was its investment in Alibaba. Defendant Bartz therefore knew, or was reckless in not knowing, that protecting the value of Yahoo's investment in Alibaba was critically important to Yahoo's business, finances and prospectus for future growth and success. Nevertheless, defendant Bartz failed to cause Yahoo to adopt and maintain internal controls and systems designed to protect Yahoo's assets and, in particular, shield Yahoo's material investment in Alibaba from unnecessary risks of loss, including misappropriation of assets and/or usurpation of Alibaba's corporate opportunities by Ma and/or other Alibaba insiders.  Defendant Bartz also owed Yahoo and its shareholders a duty to speak the whole truth. However, defendant Bartz did not speak the truth when addressing Yahoo's investment in Alibaba and/or the status thereof. Defendant Bartz is therefore liable to Yahoo for breach of candor and loyalty. Defendant Bartz is a citizen of the State of California.

21.     Defendant Jerry Yang ("Yang") was a co-founder of the Company, has been the Chief Yahoo and Yahoo director since 1995. At all relevant times, Yahoo's most

1   valuable corporate asset, accounting for a substantial portion of its market capitalization
2   according to some financial experts, was its investment in Alibaba. Defendant Yang
3   therefore knew, or was reckless in not knowing, that protecting the value of Yahoo's
4   investment in Alibaba was critically important to Yahoo's business, finances and
5   prospectus for future growth and success. Nevertheless, defendant Yang failed to cause
6   Yahoo to adopt and maintain internal controls and systems designed to protect Yahoo's
7   assets and, in particular, shield Yahoo's material investment in Alibaba from unnecessary
8   risks of loss, including misappropriation of assets and/or usurpation of Alibaba's corporate
9   opportunities by Ma and/or other Alibaba insiders. Defendant Yang also owed Yahoo and
10  its shareholders a duty to speak the whole truth. However, defendant Yang did not speak
11  the truth when addressing Yahoo's investment in Alibaba and/or the status thereof.
12  Defendant Yang is therefore liable to Yahoo for breach of candor and loyalty. Defendant
13  Yang is a citizen of the State of California.

14
15  ## THE MISSTATEMENTS AND OMISSIONS OF MATERIAL FACT
    ## IN VIOLATION OF THE SECURITIES EXHANGE ACT
16  ## ALLEGED IN THE CLASS ACTION

17      22.     Yahoo, based in Sunnyvale, California, is a global digital media company.
18  Despite its global brand, Yahoo's business has languished for the past several years, as the
19  Company has largely failed to keep up with Google and struggled to grow in highly
20  regulated and politicized fast-growing markets like China.

21      23.  :  To overcome this situation, in 2005, Yahoo invested $1 billion for a 40%
22  interest in Alibaba, China's largest e-commerce company, and one seat on Alibaba's four-
23  person board of directors. As a part of their strategic partnership, Yahoo also turned over
24  operation of Yahoo China to Alibaba. In a shareholder report discussing the Yahoo-Alibaba
25  strategic partnership, and heralding the transaction as a great opportunity for Yahoo to
26  expand its business in China, Yahoo stated:

27      24.     Through this transaction, the Company has combined its leading search
28  capabilities with Alibaba's leading online marketplace and online payment system and

-8-
Complaint

Alibaba's strong local presence, expertise and vision in the China market. These factors contributed to a purchase price in excess of the Company's share of the fair value of Aliababa's net tangible and intangible assets acquired resulting in goodwill.

25.    As the remainder of the decade unfolded, Alibaba grew rapidly. By 2011, Yahoo's 40% stake in Alibaba had grown significantly in importance to Yahoo and, in fact, had become, according to many industry experts, Yahoo's most valuable corporate asset, accounting for a substantial portion of Yahoo's $21 billion market capitalization.

26.    Until recently, one of Alibaba's most profitable "still-private holdings" was Alipay, an e-commerce payment system similar to eBay Inc.'s PayPal. As China's economy grew rapidly during the late 2000s, so did Alipay's profits. According to U.S. securities analysts, including Brett Hariss of Bagelli & Co., Alipay is worth more than $5 billion. But most importantly for Yahoo and its shareholders, Yahoo, as Alibaba's largest shareholder, had a direct connection to the profits stemming from Alipay's fast-growing and lucrative online payment system.

27.    Doing business in China can be complex and difficult for U.S. companies. Yahoo's experience in China has been no different. But, unlike other large U.S. publicly traded companies, Yahoo's single most valuable corporate asset is an investment tied up in a foreign corporation located in China, more than 4,000 miles away from Yahoo's corporate headquarters located in Sunnyvale, California.

28.    Yahoo's counterparts in China had been consulting with Yahoo for months and months on anticipated changes to Chinese regulations regarding foreign ownership. Yahoo failed to address this issue and ultimately in 2010, Alibaba transferred ownership in Alipay to Alibaba CEO Ma for $46 million. This was made known to Yahoo on March 31, 2011, at the latest, and perhaps as early as 2008. However, in an effort to make Yahoo attractive to hedge funds and other investors, defendants concealed this information.

///

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS
## <u>ISSUED DURING THE CLASS PERIOD</u>

29.     On April 19, 2011, Yahoo issued a press release announcing its first quarter 2011 financial results. The Company reported earnings of $223 million, or $0.17 diluted earnings per share, and revenue of $1,064 million. The release stated in part:

> "We are solidly executing toward our plan for returning Yahoo! to sustainable revenue and profit growth," said Carol Bartz, CEO of Yahoo!, "During the quarter, we beat the midpoint of revenue guidance while continuing to deliver on the bottom line. We continued to extend our lead as the world's premier digital media company with users to Yahoo! branded **properties** increasing 15% year over year and minutes spent increasing 17%."

30.     These were positive results and statements (with never a word about the Alipay fiasco), and Yahoo's stock reacted favorably, increasing to $16.87 per share.

31.     Later, on May 2, 2011, Greenlight Capital's investment was revealed, causing Yahoo's stock to increase to $18.14 per share.

32.     On May 10, 2011, Yahoo shareholders learned for the first time that the Company's $1 billion investment in its strategic partnership with Alibaba likely had been severely impaired by the misappropriation of Alibaba's most valuable asset, Alipay, from Alibaba to another private company controlled by Alibaba's Chairman, Jack Ma.

33.     On this news, Yahoo's stock fell by 7%, to close at $17.20 per share.

34.     On May 12, 2011, Yahoo issued a press release entitled "Yahoo! Inc. Releases Statement Regarding Alipay," which stated in part:

> Yahoo! Inc. issued the following statement in response to recent media reports regarding the timing of the restructuring of Alipay:
>
> On March 31, 2011, Yahoo! and Softbank were notified by Alibaba Group of two transactions that occurred without the knowledge or approval of the Alibaba Group board of directors or shareholders. The first was the transfer of ownership of Alipay in August 2010. The second was the deconsolidation of Alipay effective in the first quarter of 2011.
> Yahoo! disclosed this restructuring in its 10-Q after discussions with Alibaba Group and obtaining a better understanding of this complex situation.

1
2
3

> Yahoo! continues to work closely with Alibaba and Softbank to protect economic value for all interested parties. We believe ongoing negotiations among all of the parties provide the best opportunity to achieve an outcome in the best interest of all stakeholders

4
5
6
7
8

35.    According to news reports, Alibaba received only $46 million for Alipay's assets, which securities analysts valued at $5 billion. Additionally, defendants reportedly were aware of Jack Ma's misappropriation of Alipay, failing to prevent the usurpation of Yahoo's valuable financial interest in Alipay, and then concealing the entire episode from Yahoo shareholders for six months.

9
10
11

36.    On May 15, 2011, Yahoo issued a press release entitled "Joint Statement from Alibaba Group and Yahoo! Inc. Regarding Alipay," which stated in part:

12

> Yahoo! Inc. and Alibaba Group issued the following statement regarding Alipay:

13
14
15

> "Alibaba Group, and its major stockholders Yahoo! Inc. and Softbank Corporation, are engaged in and committed to productive negotiations to resolve the outstanding issues related to Alipay in a manner that serves the interests of all shareholders as soon as possible."

16
17

37.    On this news, Yahoo's stock collapsed $0.74 per share to close at $15.81 per share on May 16, 2011 — a decline of 15% from its Class Period high of $18.65 per share.

18
19

38.    The true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows:

20
21
22

(a)    Yahoo management had been informed on March 31, 2011, at the latest, that Alipay's structure had been shifted from Alibaba, reducing the value of Yahoo's investment in Alibaba by billions of dollars; and

23
24
25

(b)    Chinese regulations regarding foreign ownership had been anticipated to change as far back as 2009, which would require Yahoo or Alibaba to divest themselves of Alipay, but Yahoo had failed to develop a strategy to recover the value it had in Alibaba.

26
27

39.    As a result of defendants' false statements, Yahoo stock traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the

28

1  market, the Company's shares were hammered by massive sales, sending them down 15%
2  from their Class Period high.

### LOSS CAUSATION

3
4      40.     During the Class Period, as detailed herein, the defendants made false and
5  misleading statements and engaged in a scheme to deceive the market and a course of
6  conduct that artificially inflated the price of Yahoo common stock and operated as a fraud or
7  deceit on Class Period purchasers of Yahoo common stock by misrepresenting the
8  Company's China business and Alibaba investment. Later, when defendants' prior
9  misrepresentations and fraudulent conduct became apparent to the market, the price of
10 Yahoo common stock fell, as the prior artificial inflation came out of the price over time. As
11 a result of their purchases of Yahoo common stock during the Class Period, plaintiff and
12 other members of the Class suffered economic loss, i.e., damages, under the federal
13 securities laws.

### NO SAFE HARBOR

14
15     41.     Yahoo's verbal "Safe Harbor" warnings accompanying its oral forward-
16 looking statements issued during the Class Period were ineffective to shield those statements
17 from liability.

18     42.     The Individual Defendants are also liable for any false or misleading Forward-
19 Looking-Statement pleaded because, at the time each Forward-Looking-Statement was
20 made, the speaker knew the Forward-Looking-Statement was false or misleading and the
21 Forward-Looking-Statement was authorized and/or approved by an executive officer of
22 Yahoo who knew that the Forward-Looking-Statement was false. None of the historic or
23 present tense statements made by defendants were assumptions underlying or relating to any
24 plan, projection or statement of future economic performance, as they were not stated to be
25 such assumptions underlying or relating to any projection or statement of future economic
26 performance when made, nor were any of the projections or forecasts made by defendants
27 expressly related to or stated to be dependent on those historic or present tense statements
28 when made.

## DERIVATIVE ALLEGATIONS

43.     Plaintiff brings this action as a derivative action pursuant to Federal Rules of Civil Procedure 23.1 on behalf of and for the benefit of Yahoo.

44.     Plaintiff will fairly and adequately represent the interests of Yahoo in enforcing and prosecuting its rights, and has retained competent counsel experienced in this type of litigation to prosecute this action.

## DEMAND IS EXCUSED FOR FUTILITY

45.     Demand on Yahoo to bring this action has not been made and is not necessary because such demand would be futile.  The Board of Yahoo at the time suit was filed consisted of the following individuals: Roy Bostock, Patti Hart, Sue James, Vyomesh Joshi, David Kenny, Arthur Kern, Brad Smith, Gary Wilson and Defendants Bartz and Yang.

46.     Yahoo is a defendant in the Securities Class Action which alleges that the wrongful acts of Defendants Bartz and Yang have caused the Company to violate the federal securities laws, resulting in the substantial risk of a huge damage award against the Company.  The Company and its Board must defend that action and contend that the Individual Defendants did not violate the federal securities laws and thus the Company cannot be deemed liable.  Therefore, the Yahoo Board, at the same time cannot fairly consider a demand to bring suit against the Individual Defendants for conduct which includes the same wrongs, since the Board must contend that Bartz and Yang did nothing wrong. Accordingly, the Company's Directors are sterilized from fairly considering a pre-suit demand, given the overriding obligation to defend the Securities Class Action, and take positions consistent with such defense.

## FIRST CLAIM FOR RELIEF

(Against The Individual Defendants for Contribution Pursuant to

Sections 10(b) and 21D of the Exchange Act)

47.     Plaintiff repeats and re-alleges all previous allegations set forth above in

paragraphs 1 through 46 as though they were fully set forth herein.

48.    The Individual Defendants had a duty not to defraud the investing public by the dissemination of materially false and misleading press releases and the dissemination of materially false and misleading financial information and projections.

49.    The Individual Defendants have been sued in the Class Action alleging that the Individual Defendants caused the Company to issue false and misleading statements as alleged above and, as a result, the Company and these defendants violated Section 10(b) of the Exchange Act.

50.    It is alleged in the Class Action that the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  These Defendants, by virtue of their receipt of information reflecting the true facts regarding Yahoo, their control over, and/or receipt and/or modification of Yahoo's allegedly materially misleading misstatements and/or their associations with the Company that made them privy to confidential proprietary information concerning Yahoo, participated in the fraudulent scheme alleged herein.

51.    These Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.

52.    During the Class Period, it is alleged in the Class Action that the Class Action Individual Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period which caused plaintiff and other members of the Class to purchase Yahoo common stock at artificially inflated prices.  As alleged in the Class Action, these defendants made untrue statements of material fact and/or

1  omitted to state material facts necessary to make the statements not misleading that

2  operated as a fraud and deceit upon the purchasers of the Company's common stock in an

3  effort to maintain artificially high market prices for Yahoo's common stock in violation of

4  Section 10(b) of the Exchange Act and Rule 10b-5.

5     53.   In addition to the duties of full disclosure imposed on these defendants

6  as a result of their making of affirmative statements and reports, or participation in

7  the making of affirmative statements and reports to the investing public, they each

8  had a duty to disseminate truthful information promptly that would be material to

9  investors in compliance with the integrated disclosure provisions of the SEC as

10 embodied in SEC Regulation S-X (17 C.F.R. § 210.01 et seq.) and S-K (17 C.F.R. §

11 229.10 et seq.) and other SEC regulations, including accurate and truthful

12 information with respect to the Company's business, so that the market prices of the

13 Company's publicly traded securities would be based on truthful, complete and

14 accurate information.

15    54.   It is alleged in the Class Action that the Individual Defendants, by the

16 use of the mails or other means or instrumentalities of interstate commerce, engaged

17 and participated in a continuous course of conduct to conceal adverse material

18 information about the business, business practices, and future prospects of Yahoo as

19 specified herein.  These Defendants are alleged to have employed devices, schemes

20 and artifices to defraud, while in possession of material adverse non-public

21 information and engaged in acts, practices, and a course of conduct as alleged herein

22 in an effort to assure investors of Yahoo's value and future profitability. This

23 included the making of, or the participation in the making of, untrue statements of

24 material facts and omitting to state material facts necessary in order to make the

25 statements made about Yahoo and its business, operations and future prospects, in

26 the light of the circumstances under which they were made, not misleading, and

27 engaging in transactions, practices and a course of business which operated as a

28 fraud and deceit upon the purchasers of Yahoo securities during the Class Period.

55.   As alleged in the Class Action, as a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Yahoo's securities was artificially inflated during the Class Period.  Unaware of the fact that the market price of Yahoo's shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by these defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by these defendants but not disclosed in public statements during the Class Period, Class members acquired Yahoo's securities during the Class Period at artificially high prices and were damaged thereby.

56.   As alleged in the Class Action, at the time of said misrepresentations and omissions, the Class members were unaware of their falsity, and believed them to be true.   Had the members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Yahoo, which were not disclosed by these defendants, members of the Class would not have purchased or otherwise acquired their Yahoo securities during the Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.   As alleged in the Class Action, by virtue of the foregoing, these Individual Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5.

58.   It is further alleged in the Class Action that the Company participated in the wrongful conduct and is equally liable for violation of Section 10(b) of the Exchange Act. Assuming that the Company is liable, these Individual Defendants caused the Company to violate Section 10(b) of the Exchange Act, and incur liability for damages for violation of the federal securities laws.

///

59.     If the Company is deemed to have violated the federal securities laws, and incurs damages therefore, the Individual Defendants are liable to the Company for contribution pursuant to sections 10(b) and 21(D) of the Exchange Act.

### SECOND CLAIM FOR RELIEF

(Against the Individual Defendants for Breach of Fiduciary Duty and Waste)

60.     Plaintiff repeats and re-alleges all previous allegations set forth above in paragraphs 1 through 59 as though they were fully set forth herein.

61.     The Class Action Individual Defendants owed and owe Yahoo fiduciary obligations.  By reason of their fiduciary relationships, the Class Action Individual Defendants owed and owe Yahoo the highest obligations of good faith, fair dealing, loyalty and due care.

62.     These Defendants breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

63.     The Individual Defendants concealed material information from the Yahoo Board and the investing public because they believed it was in their personal interest to do so. This concealment appears to have had negative effects on their attempts to resolve the compensation issue over Alipay, and their actions may well will cause Yahoo to obtain less compensation then had the business issue been properly handled.  Such conduct actions was not a good faith exercise of prudent business judgment

64.     As a direct and proximate result of the Class Action Individual Defendants' misconduct, Yahoo has suffered and will continue to suffer significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

///

///

**THIRD CLAIM FOR RELIEF**

(Against The Individual Defendants for Breach of the Duty

of Full Disclosure and Complete Candor)

65.     Plaintiff repeats and re-alleges all previous allegations set forth above in paragraphs 1 through 64 as though they were fully set forth herein.

66.     Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty. When directors communicate publicly or directly with shareholders about corporate matters the *sine qua non* of directors' fiduciary duty to shareholders is honesty. Moreover, a fiduciary who learns that her earlier communications to her beneficiaries were false and nonetheless knowingly and in bad faith remains silent even as the beneficiaries continue to rely on those earlier statements also breaches his duty of loyalty and of full and fair disclosure.

67.     Each of the Individual Defendants has breached his/her duty of full disclosure and complete candor by knowingly and/or recklessly disregarding the falsity and misleading nature of the information which they caused it to be disseminated to the investing public.

68.     In addition to the duties of full disclosure imposed on the Individual Defendants as a result of their making affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, they each had a duty to disseminate truthful information promptly that would be material to investors in compliance with the integrated disclosure provisions of the SEC regulations, including accurate and truthful information with respect to the Company's business, so that the market prices of the Company's publicly traded securities would be based on truthful, complete and accurate information.

69.     As a direct and proximate result of the Individual Defendants' breach of full disclosure and complete candor, Yahoo has sustained significant damages arising out of

///

1   the alleged material misstatements to the investing public, and these Individual Defendants
2   are liable to the Company.

### JURY DEMAND

4       70.    Plaintiff demands a trial by jury.

6       **WHEREFORE**, plaintiff prays for judgment as follows:

7       A.    Against the Individual Defendants for contribution pursuant to Sections
8   10(b) and 21(D) of the Exchange Act;

9       B. '  Against all of the Individual Defendants for the damages sustained by
10  Yahoo as a result of the breaches of fiduciary duty and waste of corporate assets; as
11  set forth herein;

12      C.    Equitable and/or injunctive relief as permitted by law;

13      D.    Restitution and disgorgement of unjust enrichment;

14      E.    Attorneys' fees and costs; and

15      F.    Any such other and further relief as the Court deems just and proper.

17  Dated:   June 30, 2011

18                      **LAW OFFICES OF DAVID N. LAKE**

20                      By: _____
21                          David N. Lake, Esq.
22                        Attorney for Plaintiff

23  **Of Counsel:**

24  Kenneth A. Elan, Esq.
25  **LAW OFFICES OF KENNETH A. ELAN**
    217 Broadway, Suite 606
26  New York, NY 10007
    Telephone: (212) 619-0261
27  Facsimile: (212) 385-2707
28  Email: elanfirm@yahoo.com

## VERIFICATION

Kenneth Elan, under pain and penalty of perjury under the laws of the United States, avers that as one of plaintiff's counsel herein I verify that I he have reviewed the foregoing Shareholder's Derivative Complaint, and that the allegations are true and correct to the best of my information, knowledge and belief.

Dated: June 27, 2011

_____
Kenneth Elan