THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
Facsimile: 858/794-1450
kah@weiserlawfirm.com

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
JOSEPH M. PROFY
121 North Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: 610/225-2677
Facsimile:  610/225-2678

Attorneys for Plaintiff Yahia Tawila and Proposed Co-Lead Counsel

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEBRA SALZMAN, Derivatively on Behalf of Nominal Defendant, <br><br>                      Plaintiff, <br><br>     vs. <br><br> CAROL A. BARTZ and JERRY YANG, <br><br>                      Defendants, <br><br>     – and – <br><br> YAHOO! INC., a Delaware corporation, <br><br>              Nominal Defendant. | Case No. CV11-03269-PSG <br><br> Action Filed: July 1, 2011 <br><br> NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:        August 16, 2011 <br> TIME:        10:00 a.m. <br> JUDGE:    PAUL SINGH GREWAL |

[Caption continued on next page.]

| | | |
|---|---|---|
| JANE OH, Derivatively on Behalf of Herself and All Others Similarly Situated, | ) | Case No. CV11-03286-HRL |
| | ) | Action Filed: July 5, 2011 |
| Plaintiff, | ) | |
| vs. | ) | |
| CAROL A. BARTZ, JERRY YANG, ROY BOSTOCK, PATTI HART, SUSAN JAMES, VYOMESH JOSHI, DAVID KENNY, ARTHUR KERN, BRAD SMITH, and GARY WILSON, | ) | |
| Defendants, | ) | |
| – and – | ) | |
| YAHOO! INC., | ) | |
| Nominal Defendant. | ) | |

| | | |
|---|---|---|
| YAHIA TAWILA, Derivatively on Behalf of YAHOO! INC., | ) | Case No. CV11-03301-HRL |
| | ) | Action Filed: July 6, 2011 |
| Plaintiff, | ) | |
| vs. | ) | |
| CAROL A. BARTZ, JERRY YANG, ROY BOSTOCK, PATTI HART, SUE JAMES, VYOMESH JOSHI, DAVID KENNY, ARTHUR KERN, BRAD SMITH, and GARY WILSON, | ) | |
| Defendants, | ) | |
| – and – | ) | |
| YAHOO! INC., | ) | |
| Nominal Party. | ) | |

1    IRON WORKERS MID-SOUTH PENSION    )     Case No. CV11-03302-PSG
         FUND, Derivatively on Behalf of YAHOO!    )
2    INC.,    )    Action Filed: July 6, 2011
         )
3                  Plaintiff,    )
         )
4      vs.    )
         )
5    CAROL BARTZ, JERRY YANG, ROY J.    )
         BOSTOCK, PATTI S. HART, SUSAN M.    )
6    JAMES, VYOMESH JOSHI, ARTHUR H.    )
         KERN, BRAD D. SMITH, GARY L.    )
7    WILSON and JACK MA,    )
         )
8                 Defendants,    )
         )
9      – and –    )
         )
10    YAHOO! INC., a Delaware corporation    )
         )
11              Nominal Defendant.    )
         )

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...............................................................................................2

II.     SUMMARY OF THE ACTIONS.....................................................................4

III.    ARGUMENT ......................................................................................................6

        A.    Consolidation of the Related Yahoo Shareholder Derivative Actions Is
              Proper ......................................................................................................6

        B.    The Moving Plaintiffs Are the Most Adequate Lead Plaintiffs ..............7

        C.    The Weiser Firm and the Glancy Firm Are Both Uniquely Qualified to
              Serve as Lead Counsel ...........................................................................9

              1.    The Weiser Firm ..........................................................................10

              2.    The Glancy Firm .........................................................................13

IV.     CONCLUSION ...............................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page**

3

4

## CASES

5

*Aronson v. Lewis*,
 473 A.2d 805 (Del. 1984) ...................................................................................10

6

7

*Berkowitz v. Fodor*,
 No. C -6-05353 JW, 2006 WL 3365587 (N.D. Cal. Nov. 20, 2006).......................................4

8

*Bonato v. Yahoo! Inc.*,
 Case No. 3:11-cv-02732-CRB (N.D. Cal. June 6, 2011).....................................................3

9

10

*Brown v. Kelly*,
 No. C 06-04671 JW, 2006 WL 3411868 (N.D. Cal. Nov. 27, 2006) .....................................8

11

12

*Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*,
 339 F.2d 673 (3d Cir. 1964)........................................................................................7

13

*Gebhardt v. Allumbaugh, et al.*
 ("*El Paso*"), No. 2002-13602 (Tex. Dist. Ct., Harris County) ..............................................10

14

15

*Horn v. Raines*,
 227 F.R.D. 1 (D.D.C. 2005)........................................................................................7, 8

16

17

*Ikerd v. Lapworth*,
 435 F.2d 197 (7th Cir. 1970) ......................................................................................7

18

*In re Bank of America Corp. Sec. Derivative and ERISA Lit.*,
 258 F.R.D. 260, 272 (S.D.N.Y. 2009) .........................................................................9

19

20

*In re Family Dollar, Inc., Shareholder Derivative Litig.*,
 No. 06-CV-00510(W) (W.D.N.C.) ...............................................................................11

21

22

*In re Guidant Corp. S'holders Derivative Litig.*,
 No. 1:03-CV-00955-SEB-WTL, 2003 U.S. Dist. LEXIS 19880
 (D.N.J. Nov. 5, 2003)................................................................................................8

23

24

*In re Home Depot Inc., Derivative Litigation*,
 No. 07-CV-0356-RLV (N.D. Ga.) ...............................................................................11

25

26

*In re KeyCorp Derivative Litig.*,
 No. 1:10-cv-01786-DAP (N.D. Ohio 2010) ...................................................................11

27

28

*In re Oracle Corp. Derivative Litig.*,
 824 A.2d 917 (Del. Ch. 2003)....................................................................................9, 10

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS
AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF -

- ii -

**Page**

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)........................................................................................7

*Millman v. Brinkley*,
No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113
(N.D. Ga. Oct. 1, 2004)....................................................................................7

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*,
No. 18336, 2000 Del. Ch. LEXIS 147 (Del. Ch. Oct. 17, 2000).........................7, 8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)(iii)(I)(bb) ..............................................................................8

Federal Rules of Civil Procedure
Rule 42(a)....................................................................................................1, 2, 7

**LEGISLATIVE HISTORY**

House Conference Report No. 104-369 (1995)
104th Cong. 1st Sess. .....................................................................................9

**SECONDARY AUTHORITIES**

Bruce Meyerson, *Shareholder Suits Means More Money For Lawyers, But Bring Governance Gains*, Associated Press, July 27, 2004 …………………………………………………………10

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -

- iii -

1

2 **NOTICE OF MOTION AND MOTION**

3          PLEASE TAKE NOTICE that on August 16, 2011, at 10:00 a.m., or as soon thereafter as

4 counsel may be heard, Plaintiffs Yahia Tawila and Jane Oh (the "Moving Plaintiffs") will appear

5 before the Honorable Paul Singh Gerwal, Magistrate Judge, at the United States District Court for

6 the Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California

7 95113, to move, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and Local Rule 7 of

8 the Court, for an order consolidating the following related shareholder derivative actions (the

9 "Actions") filed in this Court on behalf of Nominal Defendant Yahoo! Inc. ("Yahoo" or the

10 "Company"):

| Case Name: | Case Number: | Date Filed: |
|---|---|---|
| *Salzman v. Bartz, et al..* | CV11-03269-PSG | July 1, 2011 |
| *Oh v. Bartz, et al.* | CV11-03286-HRL | July 5, 2011 |
| *Tawila v. Bartz, et al.* | CV11-03301-HRL | July 6, 2011 |
| *Iron Workers Mid-South Pension Fund v. Bartz, et al.* | CV11-03302-PSG | July 6, 2011 |

          The Moving Plaintiffs also seek an order consolidating all other shareholder derivative

actions filed on behalf of Yahoo in this Court that assert the same or substantially similar facts and

claims as alleged in the Actions, including any such actions that are subsequently filed in, removed

to, or transferred to this Court.

          Finally, the Moving Plaintiffs also seek an order appointing the Moving Plaintiffs as Lead

Plaintiffs and appointing Moving Plaintiffs' counsel, The Weiser Law Firm, P.C. (the "Weiser

Firm") and Glancy Binkow & Goldberg LLP (the "Glancy Firm") as Co-Lead Counsel for the

consolidated action.

          This Motion is based on the accompanying Memorandum of Points and Authorities, the

Declaration of Kathleen A. Herkenhoff (the "Herkenhoff Decl."), the [Proposed] Order

Consolidating Related Actions, Appointing Lead Plaintiffs and Appointing Co-Lead Counsel, and

such additional evidence or argument as may be required by the Court.

**ISSUES TO BE DECIDED**

Whether the Actions should be consolidated in that each is a shareholder derivative action on behalf of Yahoo asserting the same or substantially similar misconduct by the Individual Defendants?

Whether the Moving Plaintiffs should be appointed as Lead Plaintiffs given their substantial holdings of Yahoo stock and demonstrated ability to efficiently pursue the shareholder derivative claims alleged in the Actions on Yahoo's behalf?

Whether the Moving Plaintiffs' counsel, the Weiser Firm and the Glancy Firm, should be appointed as Co-Lead counsel for plaintiffs following consolidation?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, the Moving Plaintiffs move to consolidate all pending and subsequently filed related shareholder derivative actions involving nominal defendant Yahoo! Inc. ("Yahoo" or the "Company") in the Northern District of California. The Moving Plaintiffs also seek an order for their appointment as Lead Plaintiffs, and an order appointing their counsel, the Weiser Firm and the Glancy Firm, as Co-Lead Counsel.

At present, there are at least four related shareholder derivative actions (the "Actions") filed on behalf of Yahoo in this Court:

| Case Name: | Case Number: | Date Filed: |
|---|---|---|
| *Salzman v. Bartz, et al..* | CV11-03269-PSG | July 1, 2011 |
| *Oh v. Bartz, et al.* | CV11-03286-HRL | July 5, 2011 |
| *Tawila v. Bartz, et al.* | CV11-03301-HRL | July 6, 2011 |
| *Iron Workers Mid-South Pension Fund v. Bartz, et al.* | CV11-03302-PSG | July 6, 2011 |

Each of the Actions alleges that Yahoo has been damaged by the wrongful conduct of the Board of Directors of Yahoo and certain of its corporate officers (the "Individual Defendants").[1] The Actions allege that the Individual Defendants caused Yahoo to issue materially false and misleading statements regarding the Company's business and financial results. *See e.g.*, ¶¶2-9 & 41.[2] Specifically, the Individual Defendants caused the Company to fail to disclose that an important corporate asset in China – known as Alipay, an e-commerce payment system – had been transferred for a mere $46 million – astronomically less than the asset's estimated value of $5 billion. ¶¶33-46.

While concealing the information about this key asset, the Individual Defendants caused the Company to issue materially false, but positive, statements about Yahoo's financial condition, which statements caused Yahoo's stock price to trade at artificially inflated prices, reaching a high of $18.65 per share on May 6, 2011. *See e.g.*, ¶¶41-48. Ultimately, as news of the asset's transfer at a fraction of its value was belatedly revealed by the Individual Defendants, Yahoo's stock price suffered a 15% decline from its May 6, 2011 high of $18.65 per share. ¶¶43-51. As a result, Yahoo's market capitalization decreased rapidly, and the Company now faces significant liability in related federal class action litigation pending in this District. *See Bonato v. Yahoo! Inc.*, Case No. 3:11-cv-02732-CRB (N.D. Cal. June 6, 2011).

By this Motion, the Moving Plaintiffs seek an order: (i) consolidating the Actions (and any related shareholder derivative actions filed on behalf of Yahoo); and (ii) appointing the Weiser Firm and the Glancy Firm as Co-Lead Counsel.

---

[1]    There are differences as to the named defendants in the Actions, and some variation of the derivative claims pursued in each of the Actions. These minor differences will be resolved upon the filing of a consolidated complaint.

[2]    Unless otherwise noted, paragraph references ("¶__" or "¶¶__") are to the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Gorss Mismanagement, Abuse of Control, Corporate Waste and Unjust Enrichment filed July 6, 2011 by Plaintiff Tawila derivatively on behalf of Yahoo (Case No. CV11 03301-HRL (the "Tawila Complaint"). The Tawila Complaint is attached as Exhibit A to the Declaration of Kathleen A. Herkenhoff in Support of Motion to Consolidate Related Actions, Appoint Lead Plaintiffs and Appoint Co-Lead Counsel (the "Herkenhoff Decl."). The complaints filed in the other Actions listed above are also attached to the Herkenhoff Decl. at Exhibits B-D.

## II.     SUMMARY OF THE ACTIONS

Each of the Actions are shareholder derivative actions filed on behalf of Yahoo.[3]  *See* Herkenhoff Decl., Exs. A-D.  Despite Yahoo's global brand, Yahoo's business has languished for the past several years, as the Company had largely failed to keep pace with Google and struggled to grow in highly regulated and politicized fast-growing markets like China.  ¶33.

To overcome this situation, the Actions allege that in 2005, certain of the Individual Defendants caused the Company to invest $1 billion for a 40% interest in Alibaba Group Holding Limited ("Alibaba"), China's largest e-commerce company, and one seat on Alibaba's four-person board of directors.  ¶¶33-40.  As a part of their strategic partnership, Yahoo also turned over operation of Yahoo China to Alibaba.  ¶34.  In the Company's Form 10-Q for the quarterly period ended March 31, 2007, discussing the Yahoo-Alibaba strategic partnership, and heralding the transaction as a great opportunity for Yahoo to expand its business in China, the Individual Defendants caused Yahoo to state:

> Through this transaction, the Company has combined its leading search capabilities with Alibaba's leading online marketplace and online payment system and Alibaba's strong local presence, expertise and vision in the China market. These factors contributed to a purchase price in excess of the Company's share of the fair value of Aliabba's net tangible and intangible assets acquired resulting in goodwill.

¶35.

As the remainder of the decade unfolded, Alibaba grew rapidly.  By 2011, Yahoo's 40% stake in Alibaba had grown significantly in importance to Yahoo and, in fact, had become, according to many industry experts, Yahoo's most valuable corporate asset, accounting for as much as two-thirds of Yahoo's entire $21 billion market capitalization.  Yahoo's counterparts in China had been consulting with Yahoo for months and months on anticipated changes to Chinese regulations

---

[3]     According to Yahoo's public filings with the Securities and Exchange Commission, the Company operates as a digital media company that delivers personalized digital content and experiences across devices and worldwide.  The Company's communications and communities offerings provide a range of communication and social services to users and small businesses across various devices and through its broadband Internet access partners.  Its search and marketplace offerings provide answers to users' information needs by delivering meaningful search, local, and listings experiences on the search results page and across Yahoo.  ¶2.

regarding foreign ownership.  The Individual Defendants failed to address this issue and ultimately in 2010, Alibaba transferred ownership in Alipay to Alibaba CEO Jack Ma ("Ma") for $46 million, a mere fraction of its true worth.  The Individual Defendants learned of it on March 31, 2011, at the latest.  In an effort, however, to make Yahoo attractive to hedge funds and other investors, the Individual Defendants continued to cause Yahoo to conceal this information.  ¶¶36-40.

For example, on April 19, 2011, the Individual Defendants caused the Company to issue a press release announcing its first quarter 2011 financial results.  The Company reported earnings of $223 million, or $0.17 diluted earnings per share, and revenue of slightly more than $1 billion.  The release stated in part:

> "We are solidly executing toward our plan for returning Yahoo! to sustainable revenue and profit growth," said Carol Bartz, CEO of Yahoo!. "During the quarter, we beat the midpoint of revenue guidance while continuing to deliver on the bottom line. We continued to extend our lead as the world's premier digital media company with users to Yahoo! branded properties increasing 15% year over year and minutes spent increasing 17%."

¶41.  These were positive results and statements (with never a word about the Alipay fiasco), and Yahoo's stock reacted favorably, increasing to $16.87 per share. ¶42.

On May 10, 2011, Yahoo shareholders learned for the first time that the Company's $1 billion investment in its strategic partnership with Alibaba likely had been severely impaired by the misappropriation of Alibaba's most valuable asset, Alipay, from Alibaba to another private company controlled by Alibaba's Chairman, Ma.  On this news, Yahoo's stock fell by 7%, to close at $17.20 per share.  ¶43-44.

On May 12, 2011, the Individual Defendants caused the Company to issue a press release entitled "Yahoo! Inc. Releases Statement Regarding Alipay," which stated in part:

> On March 31, 2011, Yahoo! and Softbank were notified by Alibaba Group of two transactions that occurred without the knowledge or approval of the Alibaba Group board of directors or shareholders. The first was the transfer of ownership of Alipay in August 2010. The second was the deconsolidation of Alipay effective in the first quarter of 2011.

> Yahoo! disclosed this restructuring in its 10-Q after discussions with Alibaba Group and obtaining a better understanding of this complex situation.

> Yahoo! continues to work closely with Alibaba and Softbank to protect economic value for all interested parties. We believe ongoing negotiations among all of the

1    parties provide the best opportunity to achieve an outcome in the best interest of all
2    stakeholders

3    ¶45.   According to news reports, Alibaba received only $46 million for Alipay's assets, which
4    securities analysts valued at $5 billion.  Additionally, the Individual Defendants reportedly were
5    aware of Ma's misappropriation of Alipay, failing to prevent the usurpation of Yahoo's valuable
6    financial interest in Alipay, and then concealing the entire episode from Yahoo shareholders for six
7    months.  ¶46.

8         On May 15, 2011, the Individual Defendants caused the Company to issue a press release
9    entitled "Joint Statement from Alibaba Group and Yahoo! Inc. Regarding Alipay," which stated in
10   part:

11        "Alibaba Group, and its major stockholders Yahoo! Inc. and Softbank Corporation,
          are engaged in and committed to productive negotiations to resolve the outstanding
12        issues related to Alipay in a manner that serves the interests of all shareholders as
          soon as possible."

13   ¶47.

14        On this news, Yahoo's stock collapsed $0.74 per share to close at $15.81 per share on May
15   16, 2011 a decline of 15% from its Relevant Period high of $18.65 per share.  ¶48.  As a result of the
16   above detailed misconduct at Yahoo's expense and to the Company's detriment, the Actions all
17   allege that the Individual Defendants breached their fiduciary duties.  *See e.g.*, Herkenhoff Decl.,
18   Exs. A-D.

19   **III.    ARGUMENT**

20        **A.    Consolidation of the Related Yahoo Shareholder Derivative Actions Is
                  Proper**

21        Each of the above-captioned related shareholder derivative Actions currently pending in this
22   District on behalf of Yahoo involve common questions of law and fact.  As noted above, the Actions
23   all center upon the Individual Defendants' course of conduct in causing Yahoo to fail to disclose that
24   the Company's valuable corporate asset in China – Alipay – had been transferred for a mere $46
25   million – astronomically less than the asset's estimated value of $5 billion.  Each of the Actions
26   makes a core set of allegations that such misconduct constituted a breach of the Individual
27   Defendants' fiduciary duties to Yahoo and its shareholders.  *See e.g.* Herkenhoff Decl., Exs. A-D.
28

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS
AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF -                                                                              - 6 -

Therefore, the Moving Plaintiffs respectfully submit that the Actions should be consolidated for all purposes under Fed. R. Civ. P. 42(a).

The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Rule 42(a) provides:

> Consolidation; Separate Trials
>
> (a)  Consolidation.  If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

A court has discretion to consolidate related cases which involve common questions of fact and law under Rule 42(a) "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970); *see also Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).

Consolidation of similar shareholder actions, in particular, can help alleviate "needless duplication of time, effort and expense on the part of the parties and the Court."  *Millman v. Brinkley*, No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113, at *6 (N.D. Ga. Oct. 1, 2004). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits."  *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions).

**B.      The Moving Plaintiffs Are the Most Adequate Lead Plaintiffs**

Courts have consistently held that the decision of which plaintiffs should control a shareholder derivative litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiffs will best serve the interests of the shareholder base as a whole. *TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Del.

Ch. Oct. 17, 2000).  Courts have used the following objective criteria to determine who should

control a shareholder derivative litigation:

- "First, this Court should consider the quality of the pleading[s] . . . ."  *Id.*

- "Second, the Court should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit.  This factor, of course, is similar to the federal system that now uses a model whereby the class member with the largest economic interest in the action is given responsibility to control the litigation.  Delaware courts have not formally adopted the federal model, and I am not suggesting that it should be mechanically applied in every case.  But it seems appropriate, at least, to give recognition to large shareholders . . . who are willing to litigate vigorously on behalf of an entire class of shareholders . . . ."  *Id.*

- "Finally, the Court should accord some weight in the analysis to whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants."  *Id.* at *10-*11.[4]

Application of these factors to this case strongly supports the appointment of the Moving

Plaintiffs as Lead Plaintiffs for the Actions.

The Moving Plaintiffs filed the respective actions on behalf of Yahoo seeking redress for the

harm done to the Company by the Individual Defendants' improper conduct, doing so through the

well-researched and comprehensive complaints filed by their respective counsel.  *See* Herkenhoff

Decl., Exs. A & B.  A reading of these complaints, as well as this Motion, makes clear that the

Moving Plaintiffs have filed pleadings of great "quality."  *See TCW*, 2000 Del. Ch. LEXIS 147, at

*10.

Additionally, the Moving Plaintiffs are each long-term shareholders and collectively have a

significant holding in Yahoo stock.  Plaintiff Tawila holds at least 220,000 shares of Yahoo common

stock.  The Court "should give weight to the shareholder plaintiff that has the greatest economic

stake in the outcome of the lawsuit," *TCW*, 2000 Del. Ch. LEXIS 147, at *10, and suitable standing.

---

[4]     *See also Brown v. Kelly*, No. C 06-04671 JW, 2006 WL 3411868 (N.D. Cal. Nov. 27, 2006) (appointing lead plaintiffs in derivative action); *Berkowitz v. Fodor*, No. C -6-05353 JW, 2006 WL 3365587 (N.D. Cal. Nov. 20, 2006) (same).  *Brown* and *Berkowitz* also discuss factors including the capability of the proposed lead plaintiff's counsel and whether the plaintiff is subject to any unique defenses.  *Brown*, 2006 WL 3411868 at *1; *Berkowitz*, 2006 WL 3365587 *2.  Here, the capability of the proposed Co-Lead Counsel is amply demonstrated, *see infra*, and Tawila and Oh are not subject to any unique defenses.

1    The *TCW* court noted that this factor "is similar to the federal system that now uses a model whereby

2    the class member with the largest economic interest in the action is given responsibility to control

3    the litigation." *Id.*; *In re Guidant Corp. S'holders Derivative Litig.*, No. 1:03-CV-00955-SEB-WTL,

4    2003 U.S. Dist. LEXIS 19880 (D.N.J. Nov. 5, 2003); *Horn*, 227 F.R.D. 1; *see also* Private Securities

5    Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) (presumption that

6    the most adequate plaintiff is the one with the "largest financial interest in the relief sought by the

7    class").[5]

8          Accordingly, the Moving Plaintiffs, as engaged long-term Yahoo shareholders collectively

9    with a large financial interest in the outcome of the litigation of the Actions, should be appointed as

10   Lead Plaintiffs.  This will not only ensure adequate supervision during all stages of this litigation,

11   but also is a strategy designed to enhance the value of Yahoo over the long term.

12          **C.     The Weiser Firm and the Glancy Firm Are Both Uniquely Qualified
               to Serve as Lead Counsel**

13          The appointment of Co-Lead Counsel for the Actions following consolidation will ensure the

14   timely and efficient litigation of the Actions.  In selecting lead counsel, the court should consider

15   "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the

16   capabilities of counsel."  *In re Bank of America Corp. Sec. Derivative and ERISA Lit.*, 258 F.R.D.

17   260, 272 (S.D.N.Y. 2009).  As demonstrated in Exhibits A and B to the Herkenhoff Decl., the

18   Weiser Firm and the Glancy Firm have filed complaints of the highest quality in the Actions.

19   Moreover, as evidenced by this Motion, these two firms are vigorous in moving the Actions forward

20   to litigation by organizing and streamlining the cases.  The superior qualities of the Weiser Firm and

21   the Glancy Firm to lead the Actions is further demonstrated below – each firm possesses years of

---

[5]       Although this action is not a private securities class action, the rationale behind this provision of the PSLRA applies with equal force in shareholder derivative actions.  As in class actions, investors with large financial stakes will have a strong incentive to: (a) participate in the derivative litigation; (b) adequately represent the interests of the corporation in seeking release against its wayward fiduciaries; (c) ensure vigorous prosecution of the action; and (d) exercise control over the selection and actions of plaintiffs' counsel.  *See* Statement of Managers of the Reform Act, House Conference Report No. 104-369, 104th Cong. 1st Sess., at 34 (1995); Senate Report on Reform Act, Senate Report No. 104-98, 104th Cong. 1st Sess., at 11 (1995).

1   experience in successfully litigating shareholder derivative actions.  Each firm also has substantial

2   resources available to litigate the Actions.  *See e.g.* Herkenhoff Decl., Exs. E & F.

3                    **1.      The Weiser Firm**

4          The Weiser Firm has substantial experience in the prosecution of shareholder derivative

5   actions and the resources necessary to efficiently conduct this litigation, as reflected in its firm

6   resume.  *See* Herkenhoff Decl., Ex. E (The Weiser Firm Resume).  The Weiser Firm should be

7   appointed as one of the Lead Counsel because of its excellent reputation as a nationwide leader

8   prosecuting stockholder derivative claims.

9          Indeed, Robert Weiser, the founder of the Weiser Firm, has been involved in some of the

10  most successful shareholder derivative actions in history.  *See* Herkenhoff Decl., Ex. E.  Robert

11  Weiser has personally been involved in many ground-breaking shareholder derivative actions,

12  including the well-known *In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003) (one of

13  the largest derivative settlements ever at the time it was agreed to);[6] *David v. Wolfen, et al.*

14  ("*Broadcom*"), No. 01-CC-03930 (Orange County Sup. Ct.);[7] *Gebhardt v. Allumbaugh, et al.* ("*El*

15

16  _____

17  [6]      In *Oracle*, plaintiffs challenged certain multi-million dollar stock sales made by Oracle's
    senior officers, including its founder Larry Ellison.  Oracle's Board of Directors appointed a special
18  litigation committee ("SLC") to investigate plaintiffs' claims, and after a lengthy investigation, the
    SLC moved to dismiss the case, having concluded that the claims lacked merit.  Among other things,
19  plaintiffs challenged the independence of the SLC members, their good faith, and their ultimate
    conclusions.  The Delaware Chancery Court denied the SLC's motion, allowing the action to
20  proceed to trial.  At the time it was issued, the *Oracle* decision was one of only four reported
    Delaware cases where a SLC's motion to dismiss was denied by a Delaware chancellor, and many
21  commentators view the *Oracle* case as a landmark decision for shareholders.  For example, the *Wall
    Street Journal* called the seminal *Oracle* decision "one of the most far-reaching ever on corporate
22  governance." The *Oracle* case eventually settled for $100 million, making it one of the largest
    derivative settlements in history at the time it was entered into.  *Oracle*, and its impact on corporate
23  governance matters nationwide, is the subject of numerous scholarly articles and treatises.

24  [7]      Like *Oracle*, *Broadcom* produced a groundbreaking settlement.  In connection with the
    eventual settlement of *Broadcom*, plaintiffs were able to compel Broadcom to make sweeping,
25  substantial changes to its corporate governance practices which included a provision which allows
    Broadcom's shareholders to nominate directors to Broadcom's Board.  In particular, the shareholder-
26  nominated director provision was thought to be a highly significant and unusual achievement for
    Broadcom's shareholders.  As the *Associated Press* reported in commenting on the settlement: "[i]n
27  contrast to the Broadcom settlement] the Securities and Exchange Commission has met fierce
    resistance to a proposal just to allow shareholder nominations under very limited circumstances."
28  Bruce Meyerson, *Shareholder Suits Means More Money For Lawyers, But Bring Governance Gains*,

1  *Paso*"), No. 2002-13602 (Tex. Dist. Ct., Harris County),[8] *Klotz v. Parfet, et al.* ("*CMS Energy*"), No.

2  03-06483-CK (Mich. Cir. Ct., Jackson County), and *Barry v. Cotsakos* ("*E*Trade*"), No.

3  CIV419084 (Cal. Super. Ct., San Mateo County).[9]

4          In addition to the foregoing, beginning in 2006, the Weiser Firm was at the forefront of the

5  national investigation and prosecution of "stock option backdating cases." In connection therewith,

6  the Weiser Firm was appointed lead or co-lead counsel in scores of cases, and has been partially

7  responsible for the recovery of over $100 million in settlements for the subject corporations. *In re*

8  *Home Depot Inc., Derivative Litigation*, No. 07-CV-0356-RLV (N.D. Ga.); *In re KB Home*

9  *Shareholder Derivative Litig.*, No. CV-06-05148-FMC(CTx) (C.D. Cal.) ("*KB Home*"); *In re Family*

10  *Dollar, Inc., Shareholder Derivative Litig.*, No. 06-CV-00510(W) (W.D.N.C.).[10] In short, the stellar

11

12  _____

13  Associated Press, July 27, 2004. This type of corporate governance relief has only been achieved in a handful of shareholder derivative actions.

14  [8]    This shareholder derivative action centered on the corporation's alleged anti-competitive

15  conduct in California during the energy crisis of 2001-2002. In addition to sweeping changes to the Board's structure and the company's corporate governance practices, a $16.75 million recovery was

16  achieved for the Company. The *El Paso* settlement is one of the largest derivative settlements in Texas history.

17  [9]    In the *E*trade* derivative litigation, the plaintiff challenged the payment of alleged excessive

18  compensation awarded to E*trade's then-current CEO. This case was fraught with substantial difficulties from the start – challenging executive compensation awarded at a public corporation has proved to be near-impossible since the Delaware Supreme Court's decision in *Aronson v. Lewis*, 473

19  A.2d 805 (Del. 1984) – due to the historical protections afforded directors under the business judgment rule. Nonetheless, Plaintiff was able to achieve a remarkable settlement which included,

20  the CEO returning approximately $25 million in value to the Company, along with sweeping measures, and the resulting change in the public's perception of E*trade, were profiled in a *Wall*

21  Street Journal* article. *See* Suzanne Craig, *How One Firm Uses Strict Governance To Fix Its*

22  *Troubles*, Wall St. J., Aug. 21, 2003 at A1, A6. Since the time of the *E*trade* settlement, E*trade has added independent directors to its Board, who subsequently forced out the Company's CEO. In

23  response to these changes, the Company's stock increased more than 300% in the 18 months following the settlement and the "new E*trade" became the subject of several positive media reports.

24  [10]    Recently, the Weiser Firm obtained $6.5 million on behalf of TeleTech Holdings, Inc., as

25  well as a comprehensive set of corporate governance reforms, in a shareholder derivative action brought in the Delaware Chancery Court entitled, *Gregory v. Tuchman*, C.A. No. 3925-CC (Del. Ch.

26  )("*TeleTech*"). *See* Herkenhoff Decl., Ex. G (Stipulation of Settlement) at Section V(2)(A). During the hearing in which the settlement was finally approved, Chancellor Chandler cited the *TeleTech*

27  case as a "very generous" settlement which was "highly beneficial" to TeleTech and its stockholders. *See* Herkenhoff Decl., Ex H (excerpts from Transcript of January 5, 2010 Settlement Hearing) at 26-

28

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS
AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF -                                                                                                    - 11 -

1    legal talent of the Weiser Firm dictates that the firm is amply qualified to serve as a Lead Counsel

2    for the Actions.

3         In addition to the above roster of stellar results, earlier this year, in *In re KeyCorp Derivative*

4    *Litig.,* No. 1:10-cv-01786-DAP (N.D. Ohio 2010), the Weiser Firm served as lead counsel and

5    produced what it believes to be the first-ever settlement of any such case.  The *KeyCorp* derivative

6    action was based on allegations of misconduct arising from the failure of the KeyCorp Board of

7    Directors to amend the executive compensation awarded for 2009, even though a majority of

8    KeyCorp's voting stockholders rejected such compensation in a "say on pay" vote.  The settlement

9    of the *KeyCorp* case provided for a series of corporate governance measures related to: (a) the

10   ideological underpinnings of compensation principles at KeyCorp; (b) the actual award of executive

11   compensation at KeyCorp; (c) the disclosure of those decisions and ideology in KeyCorp's financial

12   filings; (d) the composition of the KeyCorp Board, its sub-committees, and their advisors; and (e)

13   KeyCorp's and its Board's ongoing relationship with KeyCorp shareholders.  In addition, pursuant

14   to the settlement, certain of the defendants in the *KeyCorp* case relinquished highly-valuable

15   economic rights which existed under their respective employment contracts.  The Weiser Firm

16   believes that collectively, these measures will save KeyCorp millions (or perhaps tens of millions) of

17   dollars over time.   *See* Herkenhoff Decl., ¶2.

18        In addition, the Weiser Firm very recently obtained extraordinary relief in connection with

19   the settlement of a shareholder derivative action brought on behalf of Vitacost.com, Inc. (*Kloss v.*

20   *Kerker, et. al.*, Case No.: 502010CA018594XXXXMB, Fl. Circuit Ct., 15th Judicial Circuit, Palm

21   Beach Cty.), which actually preserved that company's corporate form and the equity interests of its

22   shareholders.  The Vitacost action centered upon Vitacost's December 7, 2010 announcement that its

23   historical financial statements could not be relied upon due to a failure to adhere to certain critical

24   corporate formalities fourteen years earlier.  As a result, trading in Vitacost stock was halted by

25

26   _____

27   27; Ex. I (Final Judgment Approving Settlement And Order Of Dismissal).  Chancellor Chandler
     also specifically complimented plaintiff's counsel for their efforts.  *Id.*

28
     NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS
     AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     THEREOF -                                                                                    - 12 -

1  NASDAQ and Vitacost stockholders held illiquid shares of uncertain legal status.  Pursuant to the

2  settlement, the Court entered an Order which: (1) confirmed the number of shares in the Company

3  based on the number of outstanding shares in the Company's initial public offering in 2009 (in

4  effect, "quieting title" to Vitacost shares), thus reassuring Vitacost stockholders and the market that

5  Vitacost's outstanding shares and options were valid; and (2) deemed Vitacost's certificate of

6  incorporation valid and effective.  In the absence of this settlement, Vitacost could not have become

7  "current" with respect to its historical financial statements, its stock could not have resumed trading,

8  and Vitacost would have almost certainly been forced to file for bankruptcy.  This settlement was

9  unprecedented and historic, and in essence saved the Company and the interests of its stockholders.

10  *See* Herkenhoff Decl., ¶3.

11         Accordingly, the Weiser Firm is clearly capable and well-suited to serve as Co-Lead Counsel

12  in these complex stockholder derivative Actions.

13                        **2.        The Glancy Firm**

14         Glancy Binkow & Goldberg LLP has represented investors and consumers in federal and

15  state courts throughout the United States for sixteen years. Based in Los Angeles, California and

16  with offices in New York, New York and San Francisco, California, Glancy Binkow & Goldberg has

17  developed expertise prosecuting securities fraud, antitrust, complex commercial litigation, and

18  shareholder derivative litigation.  As Lead Counsel or as a member of Plaintiffs' Counsel Executive

19  Committees, Glancy Binkow & Goldberg has recovered in excess of $1 billion for parties wronged

20  by corporate fraud and malfeasance. The firm's efforts on behalf of individual investors have been

21  the subject of articles in such publications as The Wall Street Journal, The New York Times and The

22  Los Angeles Times.   The firm has represented, or currently represents, numerous plaintiffs in

23  shareholder derivative actions, including, among others:

24

25         *In re Acura Pharmaceuticals, Inc.*,
       In the Circuit Court of Cook County, Illinois, County Department – Chancery Division, Case
26     No. 10CH46380;

27     *Conroy v. Citibank, N.A., et al.*,

28

1   USDC Central District of California, Case No. 10-4930;

2   *Diep v. Chen, et al.*,
3   USDC Southern District of New York, Case No. 11-CV-3210;

4   *Dulberg v. Plastina, et al.*,
    USDC Central District of California, Case No. 8-11-cv-00351 JVS (RNBx);
5

6   *Garay v. Gamache, et al.*,
    USDC Northern District of Illinois, Case No. 11-cv-04412;
7

8   *Markowitz v. Duprey, et al.*,
    In the Circuit Court of Cook County, Illinois, County Department – Chancery Division, Case
9   No. 11-CH-11048;

10  *Oh v. Bartz, et al.*,
    USDC Northern District of California, Case No. 11-cv-03286;
11

12  *Sabbag v. Akeena Solar, Inc., et al.*,
    USDC Northern District of California, Case No. 10-002735;

13  *In re STEC, Inc. Derivative Litigation*,
    USDC Central District of California, Case No. 10-00667; and
14

15  *Surloff v. Georgiopoulos, et al.*,
    USDC Southern District of New York, Case No. 11-CV-1855-RJH
16

17  **IV.   CONCLUSION**

18          For all of the above reasons, the Moving Plaintiffs respectfully request that their Motion be

19  granted.   The Actions should be consolidated, the Moving Plaintiffs should be appointed Lead

20  Plaintiffs, and the Moving Plaintiffs' counsel – the Weiser Firm and the Glancy Firm – should be

21  appointed as Co-Lead Counsel.

    DATED:  July 11, 2011                          THE WEISER LAW FIRM, P.C.
22                                                 KATHLEEN A. HERKENHOFF (168562)

23

24                                                       s/KATHLEEN A. HERKENHOFF
                                                   KATHLEEN A. HERKENHOFF
25
                                                   12707 High Bluff Drive, Suite 200
26                                                 San Diego, CA 92130
                                                   Telephone: 858-794-1441
27                                                 Facsimile: 858-794-1450

28                                                 THE WEISER LAW FIRM, P.C.

ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
JOSEPH M. PROFY
121 North Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: 610/225-2677
Facsimile:  610/225-2678

Attorneys for Plaintiff Yahia Tawila and
Proposed Co-Lead Counsel

GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY (134180)
MICHAEL GOLDBERG (188669)
EX KANO S. SAMS II (192936)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: 310/201-9150
Facsimile: 310/201-9160
info@glancvlaw.com

Attorneys for Plaintiff Jane Oh and Proposed Co-
Lead Counsel

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
BILLY J. BRISCOE
8117 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: 214-706-9314
Fascimile: 214-706-9315

POWERS TAYLOR
PATRICK POWERS
MARK TAYLOR
PEYTON HEALEY
Campbell Centre II
8150 North Central Expy.,
Suite 1575
Dallas, Texas 75206

Additional Attorneys for Plaintiff Jane Oh

NOTICE OF MOTION AND MOTION TO CONSOLIDATE RELATED ACTIONS, APPOINT LEAD PLAINTIFFS
AND APPOINT CO-LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
THEREOF -                                                                                                          - 15 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.  I hereby certify that I caused to be hand delivered the foregoing document or paper to the non CM/ECF participants indicated on the attached Manual Notice List that are noted by a double asterisk (**).  I also certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List that are noted by a single asterisk (*).

I further certify that I caused this document to be forwarded to the following Designated Internet Site at: http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 11, 2011.

    s/ KATHLEEN A. HERKENHOFF
KATHLEEN A. HERKENHOFF

THE WEISER LAW FIRM, P.C.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
Facsimile: 858/794-1450

E-mail: kah@weiserlawfirm.com

**YAHOO Service List**

*THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
Facsimile:  858/794-1450
kah@weiserlawfirm.com

– and –

*THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
BRETT D. STECKER
JEFFREY J. CIARLANTO
JOSEPH M. PROFY
121 N. Wayne Avenue, Suite 100
Wayne, PA 19087
Telephone: 610/225-2677
Facsimile:  610/225-2678
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jjc@weiserlawfirm.com
jmp@weiserlawfirm.com

Attorneys for Plaintiff & Movant Yahia Tawila

**ROBBINS UMEDA LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
SHANE P. SANDERS
GINA STASSI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
Facsimile:  619/525-3991
brobbins@robbinsumeda.com
gsmith@robbinsumeda.com
ssanders@robbinsumeda.com
gstassi@robbinsumeda.com

Attorneys for Plaintiff Iron Workers Mid-South Pension Fund

*GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY
MICHAELGOLDBERG
EX KANO SAMS II
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: 310/201-9150
Facsimile:  310/201-9160
info@glancylaw.com

Attorneys for Plaintiff & Movant Jan Oh

*THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
BILLY J. BRISCOE
8117 Preston Road, Suite 300
Dallas, TX 75225
Telephone: 214/706-9314
Facsimile:  214/706-9315

Attorneys for Plaintiff & Movant Jane Oh

*POWERS TAYLOR
PATRICK POWERS
MARK TAYLOR
PEYTON HEALEY
Campbell Centre II
8150 North Central Expy., Suite 1575
Dallas, TX 75206
Telephone: 214/239-8900
Facsimile: 214/239-8901
info@powerstaylor.com

Attorneys for Plaintiff & Movant Jane Oh

*LAW OFFICES OF KENNETH A. ELAN
KENNETH A. ELAN
217 Broadway, Suite 606
New York, NY 10007
Telephone: 212/619-0261
Facsimile: 212/385-2707
elanfirm@yahoo.com

Attorneys for Plaintiff Debra Salzman

**Defendants**
**MORRISON & FOERSTER LLP
MARK FOSTER
425 Market Street
San Francisco, CA 94105
Telephone: 415/268-6335
Facsimile: 415/276-7349
mfoster@mofo.com

Attorneys for Yahoo, Inc., Carol A. Bartz, Jerry
Yang, Roy Bostock, Patti Hart, Susan James,
Vyomesh Joshi, David Kenny, Arthur Kern,
Brad Smith, and Gary Wilson

*Defendant Jack Ma
24/F, Jubilee Center
18 Fenwick Street
Wanchai, Hong Kong, China

**LAW OFFICES OF DAVID N. LAKE
DAVID N. LAKE
16130 Ventura Boulevard, Suite 650
Encino, CA 91436
david@lakelawpc.com

Attorneys for Plaintiff Debra Salzman

- 2 -

# Mailing Information for a Case 5:11-cv-03269-PSG

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **David Nathan Lake**
  david@lakelawpc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)