1  JORDAN ETH (CA SBN 121617)
   jeth@mofo.com
2  ANNA ERICKSON WHITE (CA SBN 161385)
   awhite@mofo.com
3  MARK R.S. FOSTER (CA SBN 223682)
   mfoster@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone: 415.268.7000
6  Facsimile:  415.268.7522
7  Attorneys for Nominal Defendant
   Yahoo! Inc.

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12

13  IN RE YAHOO! INC. SHAREHOLDER      Master Docket No. 3:11-CV-03269-CRB
    DERIVATIVE LITIGATION
14                                     (Consolidated with 3:11-CV-03301-CRB;
                                       3:11-CV-03302-CRB)
15  This Document Relates To:
16            ALL ACTIONS.            **YAHOO! INC.'S REPLY
                                       IN FURTHER SUPPORT OF ITS
17                                     MOTION TO DISMISS PLAINTIFFS'
                                       VERIFIED CONSOLIDATED
18                                     SHAREHOLDER DERIVATIVE
                                       COMPLAINT FOR ITS FAILURE
19                                     TO PLEAD DEMAND FUTILITY**

20                                     Hearing Date:  December 11, 2015
                                       Hearing Time:  10:00 a.m.
21                                     Judge:         Hon. Charles R. Breyer
                                       Courtroom:     6, 17th Floor
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

SUMMARY OF ARGUMENT ...........................................................................................vi

ARGUMENT .......................................................................................................................1

I.  THE STRINGENT STANDARDS OF RULE 23.1, NOT RULE 8, CONTROL. ..................................................................................................1

II.  DEMAND IS NOT EXCUSED AS TO THE CLAIMS OF BOARD INACTION. .............................................................................................2

    A.  Demand Is Not Excused As To Plaintiffs' Recycled False Statement Claim. ...............................................................................2

        1.  Plaintiffs fail to show that any statements were false when made. ...............................................................................2

        2.  Plaintiffs also fail to plead any facts showing that any Yahoo Director had any responsibility for the challenged statements. ......................................................................4

        3.  Plaintiffs also fail to plead any facts showing each Yahoo Director's scienter. ....................................................5

    B.  Demand Is Not Excused As To Plaintiffs' Claim That The Yahoo Directors Consciously Failed To Prevent Ma's Alleged Misappropriation Of Alipay. ..................................................5

        1.  Plaintiffs fail to plead any facts showing that the Yahoo Directors ignored the proposed PBOC regulations in bad faith. ............................................................................6

        2.  Plaintiffs fail to plead any facts showing that the Yahoo Directors knew Ma would unilaterally misappropriate Alipay. .............................................................................7

III.  DEMAND IS NOT EXCUSED AS TO PLAINTIFFS' CHALLENGE TO THE FRAMEWORK AGREEMENT. ....................................................11

IV.  THIS ACTION SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND. ...............................................................................................13

CONCLUSION ...................................................................................................................15

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allison ex rel. Gen. Motors Corp. v. Gen. Motors Corp.*,
    604 F. Supp. 1106 (D. Del. 1985) ........................................................................ 1

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ................................................................................... 11

*Bender v. Schwartz*,
    917 A.2d 142 (Md. Ct. Spec. App. 2007) ............................................................ 14

*Braddock v. Zimmerman*,
    906 A.2d 776 (Del. 2006) .............................................................................. vi, 13

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) .............................................................................. 1, 12

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) .............................................................................. 1

*Brown v. Moll*,
    No. 09-05881 SI,
    2010 WL 4704372 (N.D. Cal. Nov. 12, 2010) .................................................... 10

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007) ........................................................................ vi, 9

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996) .................................................................................. 2

*Higher Educ. Mgmt. Grp., Inc. v. Mathews*,
    No. C.A. No. 911-VCP,
    2014 WL 5573325 (Del. Ch. Nov. 3, 2014) ........................................................ 9

*In re Abbott Labs. Deriv. S'holder Litig.*,
    325 F.3d 795 (7th Cir. 2003) ............................................................................... 9

*In re Accuray, Inc. S'holder Deriv. Litig.*,
    757 F. Supp. 2d 919 (N.D. Cal. 2010) ....................................................... 4, 5, 10

*In re Biopure Corp. Deriv. Litig.*,
    424 F. Supp. 2d 305 (D. Mass. 2006) ................................................................ 10

*In re Citigroup S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009) .......................................................................... 4, 5

*In re Coinstar Inc. S'holder Deriv. Litig.*,
    No. 11-133 MJP,
    2011 WL 5553778 (W.D. Wash. Nov. 14, 2011) ............................................... 10

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

ii

*In re General Motors Co. Deriv. Litig.*,
   No. C.A. No. 9627-VCG,
   2015 WL 3958724 (Del. Ch. June 25, 2015) ..................................................... vi, 11

*In re HP Deriv. Litig.*,
   No. 10-cv-3608 EJD,
   2012 WL 4468423 (N.D. Cal. Sept. 25, 2012) ................................................. 12, 13

*In re INFOUSA, Inc. S'holders Litig.*,
   953 A.2d 963 (Del. Ch. 2007) (Opp. 23, 24) ......................................................... 2

*In re Intel Corp. Deriv. Litig.*,
   621 F. Supp. 2d 165 (D. Del. 2009) ..................................................................... 9

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 808 (Del. Ch. 2005) ............................................................................. 13

*In re Maxwell Tech. Deriv. Litig.*,
   No. 13-cv-966-BEN (RBB),
   2014 WL 2212155 (S.D. Cal. May 27, 2014) ............................................. 4, 5, 10

*In re Netsmart Tech., Inc. S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007) ............................................................................... 4

*In re Polycom, Inc. Deriv. Litig.*,
   78 F. Supp. 3d 1006 ..................................................................................... 4, 5, 6, 13

*In re Silicon Graphics, Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ................................................................. vi, 3, 11, 13

*In re VeriSign, Inc., Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ................................................................. 3

*In re Walt Disney Co. Derivative Litig.*,
   906 A.2d 27 (Del. 2006) ................................................................................. 4, 12

*In re Yahoo! Inc. Sec. Litig.*,
   No. C 11-02732 CRB,
   2012 WL 3282819 (N.D. Cal. Aug. 10, 2012) ................................................ v, 3, 9

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991) ....................................................................................... 2

*Malone v. Brincat*,
   722 A.2d 5 (Del. 1998) ................................................................................... v, 2, 3

*Mills v. State*,
   732 A.2d 845 (Del. 1999) ....................................................................................... 2

*Mitzner v. Hastings*,
   C 04-3310 FMS,
   2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ............................................................ 1

*Personal Elec. Transports, Inc. v. Office of U.S. Tr.*,
   313 F. App'x 51 (9th Cir. 2009) ......................................................................... 11

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

iii

*Pfeiffer v. Toll*,
   989 A.2d 683 (Del. Ch. 2010) ............................................................................................. 10

*Potter v. Hughes*,
   546 F.3d 1051 (9th Cir. 2008) ............................................................................................ 14

*Quinn v. Anvil Corp.*,
   620 F.3d 1005 (9th Cir. 2010) ....................................................................................... 1, 15

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) .................................................................................................... 14

*Rosenbloom v. Pyott*,
   765 F.3d 1137 (9th Cir. 2014) .............................................................................................. 1

*Saito v. McCall*,
   No. 17132-NC,
   2004 WL 3029876 (Del. Ch. Dec. 20, 2004) ....................................................................... 9

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .............................................................................................. 10

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) .................................................................................................... 14

*Stone ex rel. AmSouth Bancorp. v. Ritter*,
   911 A.2d 362 (Del. 2006) .................................................................................................. 5, 6

*Talley v. Mann*,
   No. 11-05003 GAF (SSx),
   2012 WL 946990 (C.D. Cal. Feb. 14, 2012) ..................................................................... 4, 5

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*,
   119 A.3d 44, 64-65 (Del. Ch. 2015) ................................................................................... 12

*White v. Panic*,
   783 A.2d 543 (Del. 2001) ........................................................................................ vi, 12, 13

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) ...................................................................................... vi, 4, 5, 7

*Zoumboulakis v. McGinn*,
   No. 13-CV-02379-EJD
   2014 WL 3926565 (N.D. Cal. Aug. 7, 2014) ................................................................... 1, 5

*Zucker v. Andreessen*,
   No. 6014-VCP,
   2012 WL 2366448 (Del. Ch. June 21, 2012) ..................................................................... 12

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

iv

**CONSTITUTIONAL PROVISION AND RULES**

United States Constitution art. III ................................................................................................ 14

Fed. R. Civ. P.
　　Rule 8 ................................................................................................................................ 1
　　Rule 8(a) ............................................................................................................................ 1
　　Rule 12(b)(6) ..................................................................................................................... 1
　　Rule 23.1 ................................................................................................................ v, 1, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

v

1

## SUMMARY OF ARGUMENT

2        Plaintiffs' Opposition argues demand futility by using colorful phrases:  there were

3    "myriad red flag warnings," and "escalating threats" about Alipay that went unheeded by

4    Yahoo's Directors, who "utterly failed" to discharge their fiduciary duties.  This rhetoric does not

5    substitute for the particularized facts of bad faith that are required under the stringent pleading

6    standards imposed by Rule 23.1 and Delaware law.  The Opposition's unsupported arguments

7    confirm Plaintiffs' failure to plead particularized facts sufficient to show that any Yahoo Director,

8    much less a majority, is interested in the three categories of claims asserted in the Complaint.

9    Plaintiffs therefore fail to meet their burden of pleading the futility of pre-suit demand.

10        Plaintiffs fail to plead facts excusing demand as to their disclosure claims, which this

11   Court and the Ninth Circuit already rejected.  *In re Yahoo! Inc. Sec. Litig.*, 2012 WL 3282819

12   (N.D. Cal. Aug. 10, 2012), *aff'd*, 611 F. App'x 387 (9th Cir. 2015).  The Opposition asserts that

13   Plaintiffs challenge different statements.  But that is demonstrably false.  Plaintiffs challenge the

14   ***same*** statements and for the ***same*** reasons that this Court and the Ninth Circuit already considered

15   and rejected.  *Id.*  Plaintiffs also argue that different standards apply, but that is wrong, too.

16   Delaware law imposes the same falsity standard that this Court applied in the Class Action.

17   *Compare id. with Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998).  Moreover, beyond boilerplate,

18   the Opposition does not point to any particularized allegations showing that any Yahoo Director

19   participated in making the challenged statements, let alone "deliberately misinform[ed]

20   shareholders."  *Id.* at 9, 14.  Plaintiffs' other arguments for excusing demand fare no better.

21        Plaintiffs also fail to excuse demand as to their *Caremark* claim.  Plaintiffs assert that the

22   contemplated PBOC regulations on foreign ownership of online payment companies were a "red

23   flag."  But those regulations were never enacted.  That is "beside the point," Plaintiffs

24   alternatively say, because the Yahoo Directors allegedly knew Ma would unilaterally steal Alipay

25   based on a supposed conversation Ma had with Yang.  The problem for Plaintiffs is that ***Ma's***

26   ***conversation was with SoftBank's CEO, not Yang,*** as the Opposition now admits.  There is no

27   basis, then, to conclude that Yang consciously ignored warnings from Ma.  Moreover, Plaintiffs'

28   deficient allegations about Yang's foreknowledge cannot be imputed to any other Yahoo Director

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

vi

1   under on-point case law that the Opposition ignores.  *E.g.*, *Desimone v. Barrows*, 924 A.2d 908,

2   943 (Del. Ch. 2007).  Plaintiffs, therefore, fail to show that any Yahoo Director, much less a

3   majority, "consciously and in bad faith" disregarded his or her fiduciary duties.  *Wood v. Baum*,

4   953 A.2d 136, 142, 143 (Del. 2008).

5          Plaintiffs also fail to excuse demand based on their claim about the approval of the

6   Framework Agreement.  The Opposition argues that the Framework Agreement's release of

7   claims against Alibaba and its directors was "unnecessary."  But Plaintiffs' disagreement with the

8   decision does not meet their burden of showing the Yahoo Directors made the decision in "bad

9   faith."  *In re General Motors Co. Deriv. Litig.,* 2015 WL 3958724, at *11 (Del. Ch. June 25,

10  2015).  Plaintiffs do not even try to show bad faith, a high hurdle given that, like other board

11  decisions, approval of a release is presumed a valid exercise of business judgment.  *See White v.*

12  *Panic*, 783 A.2d 543, 554 & n.36 (Del. 2001).  And Plaintiffs cannot get around the fact that

13  Yahoo received many benefits in exchange, including resolution of the uncertainty surrounding

14  the Alipay restructuring, and Yahoo's pro rata share of between $2 billion and $6 billion for

15  Alipay in any liquidity event.  The Opposition's arguments thus fail to show that the release

16  "served no corporate purpose" or that "the corporation received no consideration at all."  *Id*.

17         Finally, the Opposition seeks leave to amend, but does not proffer any facts that could be

18  alleged in any amended complaint.  That is not surprising given that Plaintiffs already have had

19  over four years to gather facts and opted not to amend when the stay of this litigation was lifted in

20  May, 2015.  Moreover, Plaintiffs do not dispute that any amended complaint would have to plead

21  demand on Yahoo's current board.  *Braddock v. Zimmerman*, 906 A.2d 776 (Del. 2006).  It is

22  inconceivable that an amended complaint could plead demand futility given that all but one of the

23  current directors joined the board after the events at issue here.  Amendment, therefore, would be

24  futile.  *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 991 (9th Cir. 1999).

25         For these reasons and those discussed below, the Court should dismiss the action without

26  further leave to amend.

27

28

1

**ARGUMENT**

2

**I.     THE STRINGENT STANDARDS OF RULE 23.1, NOT RULE 8, CONTROL.**

3

Plaintiffs try to dilute their pleading burden by asserting that Federal Rule of Civil

4

Procedure 23.1 just "supplements Rule 8's notice pleading standard" and that "the standards

5

governing pleadings challenges under Rule 12(b)(6) are still controlling."  (Opp. 11.)[1]  The only

6

authority Plaintiffs cite for their assertion is *Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003), an

7

inapposite civil rights case.  The controlling Ninth Circuit cases discussing Rule 23.1 make clear:

8

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for

9

failure to make a demand is not intended to test the legal sufficiency of the plaintiff's substantive

10

claim.  Rather, its purpose is to determine who is entitled, as between the corporation and its

11

shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf."

12

*Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 n.9 (9th Cir. 2014).  Given that the shareholder

13

derivative suit is an "extraordinary process" and "'remedy of last resort,'" the pleading standard is

14

"stringent."  *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (citation omitted).

15

Accordingly, as many cases hold: "Rule 23.1 imposes a higher standard of pleading than Rule

16

8(a)."  *Zoumboulakis v. McGinn*, 2014 WL 3926565, at *5 (N.D. Cal. Aug. 7, 2014).[2]

17

On the substantive standard under Delaware law, Plaintiffs have abandoned their claim

18

that any Yahoo Director lacks independence.  That means that Plaintiffs' allegations must create a

19

"reasonable doubt" that, for each one of their three categories of claims, a majority of Yahoo

20

Directors are "interested."  (MTD 5; Opp. 12.)  It's true that "smoking gun" evidence is not

21

required.  (Opp. 12.)  But reasonable doubt does not arise unless particularized facts are alleged

22

showing a "'substantial likelihood of personal liability,'" which "'may only be found to exist if

23

24

[1]  All references to "MTD __" and to "Opp. __" are to the pages of Yahoo's Opening Brief (Doc. 68) and Plaintiffs' Omnibus Opposition (Doc. 76), respectively.  All other conventions and abbreviations conform to the usage in the Opening Brief.

25

26

[2]  *See also, e.g.*, *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) ("pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a)"); *Mitzner v. Hastings*, 2005 WL 88966, at *4 (N.D. Cal. Jan. 14, 2005) ("Plaintiff's pleading burden is thus more onerous than that required to

27

withstand an ordinary motion to dismiss"); *Allison ex rel. Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del. 1985) (Rule 23.1 represents "a marked departure from the 'notice' pleading philosophy.").

28

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

1

1  the plaintiff pleads a *non-exculpated* claim against the directors.'" (MTD 5 (quoting *Wood v.*

2  *Baum*, 953 A.2d 136, 141 n.11 (Del. 2008).)[3]  This requires Plaintiffs to allege "'fraudulent,'

3  'illegal' or 'bad faith conduct,' and 'particularized facts that demonstrate the directors acted with

4  scienter.'" (MTD 5 (quoting *Wood*, 953 A.2d at 141).)  This standard is rarely met, as confirmed

5  by the very cases Plaintiffs cite for the legal standard, which affirmed dismissal or are inapposite.

6  (Opp. 12.)[4]

7  **II.     DEMAND IS NOT EXCUSED AS TO THE CLAIMS OF BOARD INACTION.**

8          **A.     Demand Is Not Excused As To Plaintiffs' Recycled False Statement Claim.**

9          The Opposition fails to show that any Yahoo Director, much less a majority, faces a

10  substantial likelihood of liability for making misleading statements as asserted in the Complaint's

11  first Count. (Opp. 22-25.)[5]  Sweeping aside the rulings of this Court and the Ninth Circuit, the

12  Opposition says they "have no bearing" here. (Opp. 24 & nn.15, 16.)  Plaintiffs posit that the

13  Class Action was decided under different standards and "challenged different statements for

14  different reasons." (Opp. 24.)  These meritless arguments are just an attempt at relitigating

15  decided issues. And, in any event, Plaintiffs have not met their burden of showing that demand is

16  excused as to their disclosure claims, given the Complaint's failure to plead each Yahoo

17  Director's role in making the allegedly false statements or each Yahoo Director's scienter.

18              **1.     Plaintiffs fail to show that any statements were false when made.**

19          The first fatal flaw is Plaintiffs' failure to show falsity. Contrary to Plaintiffs' assertions,

20  the challenged statements here, like the challenged statements in the Class Action, are statements

21

---

22  [3]  That is so because Plaintiffs only pursue duty of loyalty claims (*e.g.*, Opp. vii:14-16, viii:3,
    12:25; 27:24, 30:3), and in light of Yahoo's Articles of Incorporation, which exculpate the Yahoo

23  Directors for duty of care claims. (MTD 5; Ex. 1, Art. XI.)
    [4]  *Levine v. Smith*, 591 A.2d 194, 208 (Del. 1991) (affirming dismissal of demand futility case);

24  *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996) (affirming dismissal of demand refused
    case). *Mills v. State*, 732 A.2d 845 (Del. 1999), was an appeal of a criminal conviction for

25  possession of a "destructive weapon" and, thus, has no application here.
    [5]  The Opposition recasts Plaintiffs' claims as claims for alleged breaches of the duty of candor.

26  (Opp. 22.) But the Complaint does not once invoke the duty of candor, which only comes into
    play when, unlike here, directors solicit stockholder votes. *See Malone*, 722 A.2d at 5. In any

27  event, the elements of a disclosure claim, whether styled as breach of a fiduciary duty or breach
    of the duty of candor, are the same. *See id.* at 9, 14; *In re INFOUSA, Inc. S'holders Litig.*,

28  953 A.2d 963, 990-91 (Del. Ch. 2007) (Opp. 23, 24). The claims thus fail under either label.

1  made by Yahoo in SEC filings, press releases, and conference calls spanning from August 2010

2  to May 2011.  (*Compare* ¶¶ 101, 102, 105, 107, 172 *with* Ex. 11 ¶¶ 85, 119-21, 135, 146 *and In*

3  *re Yahoo!*, 2012 WL 3282819, at *11-12, *14-16.)  Beyond making the conclusory and

4  demonstrably erroneous claim that the statements at issue are "different" (Opp. 24:8), the

5  Opposition does not even try to identify a disclosure at issue here that was not at issue in the

6  Class Action.

7          Plaintiffs' "different standard" argument is also wrong.  The "essential inquiry," under

8  Delaware law, just as it is under the federal securities laws, is whether there is "an alleged

9  omission or misrepresentation that is material."  *Malone*, 722 A.2d at 12 & n.28.  Not

10  surprisingly, then, courts routinely reject demand-futility arguments that are premised on the

11  same disclosures rejected in class actions.  *E.g.*, *In re Silicon Graphics*, 183 F.3d at 989-90.[6]

12  Plaintiffs certainly have not cited any case holding otherwise.

13          Equally flawed is Plaintiffs' argument that their reasons for claiming falsity are "quite

14  different" from those presented in the Class Action.  (Opp. 24 n.16.)  Plaintiffs' arguments are as

15  different as identical twins.  Here, Plaintiffs argue that liability arises from the alleged failure to

16  disclose the technical transfer of Alipay's share ownership in 2009 and 2010.  (Opp. 23.)  In the

17  Class Action, however, this Court considered and rejected the argument that statements were

18  misleading because they "did not disclose the stock transfer of Alipay to Zhejiang in August of

19  2010 and the termination of the VIE in January of 2011."  *In re Yahoo!*, 2012 WL 3282819, at

20  *16.  Plaintiffs argue that "Defendants did not disclose that just $46 million had been paid" for

21  Alipay's shares.  (Opp. 23:25.)  But in the Class Action, this Court considered and rejected the

22  argument that Yahoo failed to disclose "that the Alibaba Group received only $46 million for the

23  transfer" of Alipay.  *In re Yahoo!*, 2012 WL 3282819, at *12-13.  Finally, Plaintiffs argue that

24  Yahoo's May 10, 2011 disclosure of Alipay's restructuring was incomplete.  (Opp. 23:18-25.)

25  This Court considered and rejected that argument too.  *In re Yahoo!*, 2012 WL 3282819, at *12.

26

27  [6]  *E.g.*, *In re VeriSign, Inc.*, *Deriv. Litig.*, 531 F. Supp. 2d 1173, 1192 (N.D. Cal. 2007) ("Having
    failed to state a claim for . . . securities fraud, plaintiffs cannot use those causes of action as a
28  basis for alleging demand futility.").

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

3

1    The only potentially new falsity argument that Plaintiffs raise is that the Yahoo Directors

2    face a substantial likelihood of liability for not disclosing the risk of the PBOC regulations

3    becoming law and the risk that Ma would misappropriate Alipay.  (Opp. 23.)  This minor

4    variation on the same arguments leads to the same conclusion.  Plaintiffs have pleaded no facts

5    showing any Yahoo Director believed that there was a risk either that the PBOC regulations

6    would take effect (which they never did) or that Ma unilaterally would misappropriate Alipay, as

7    discussed in Part B below.  The Yahoo Directors could not disclose what was unknown to them.

8              **2.    Plaintiffs also fail to plead any facts showing that any Yahoo Director
                       had any responsibility for the challenged statements.**

9

10   A second fatal flaw is Plaintiffs' failure to show "sufficient board involvement in the

11   preparation of the disclosures."  *In re Citigroup S'holder Deriv. Litig.*, 964 A.2d 106, 134 (Del.

12   Ch. 2009).  In response, the Opposition tries to get by on allegations that the Yahoo Directors

13   "signed" or were involved with "reviewing" the disclosures at issue.  (Opp. 23-24 & n.17.)

14   Courts routinely hold that conclusory assertions like this do not excuse demand.  In *Wood*, the

15   Delaware Supreme Court held that the "Board's execution" of challenged statements was not

16   enough to show sufficient involvement.  953 A.2d at 142.  In *Citigroup*, the Delaware Court of

17   Chancery ruled that conclusory allegations that the board "reviewed" statements did not show

18   they were "directly responsible for the misstatements or omissions" as required.  964 A.2d at 134;

19   *id.* at 133 n.88.  Other decisions reach the same conclusion.[7]  Again, Plaintiffs cite no contrary

20   authority.[8]

21

22

23   [7]  *See In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1017 (N.D. Cal. 2015) (rejecting general
     allegations of board participation); *In re Accuray, Inc. S'holder Deriv. Litig.*, 757 F. Supp. 2d
24   919, 928 (N.D. Cal. 2010) (rejecting arguments about signatures, approvals, and membership on
     audit committee); *In re Maxwell Tech. Deriv. Litig.*, 2014 WL 2212155, at *11 (S.D. Cal.
25   May 27, 2014) (the plaintiffs "have not alleged that the Director Defendants prepared the
     statements"); *Talley v. Mann*, 2012 WL 946990, at *12 (C.D. Cal. Feb. 14, 2012) ("Plaintiff has
26   not alleged that any of these misstatements was subject to pre-approval or any other form of
     authorization by the Board.").
27   [8]  The only cases Plaintiffs cite on this point—*In re Walt Disney Co. Derivative Litig.*, 906 A.2d
     27, 66-67 (Del. 2006), and *In re Netsmart Tech., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del.
28   Ch. 2007)—do not address board participation in disclosures and are thus inapposite.

1

2

**3.     Plaintiffs also fail to plead any facts showing each Yahoo Director's scienter.**

3

4

A third fatal flaw is Plaintiffs' failure to plead facts showing each Yahoo Director made

the statements with scienter.  (MTD 7.)  Plaintiffs counter with irrelevant boilerplate, saying: "the

5

Complaint specifically alleges the roles of the four Audit Committee Directors and Defendants

6

Bartz and Yang in making or reviewing and approving the challenged statements and omissions."

7

(Opp. 24-25.)  This assertion does not meet the "involvement" test as shown above, much less

8

does it bear on or show scienter.

9

The Opposition does not and cannot point to any particularized allegations showing that

10

any of the Yahoo Directors, let alone a majority, "knew they were not discharging their fiduciary

11

obligations," which is required to show "bad faith."  *Stone ex rel. AmSouth Bancorp. v. Ritter*,

12

911 A.2d 362, 366-67, 370 (Del. 2006).  Courts routinely hold that demand futility cannot be

13

established without such facts.  *See id.*; *Wood*, 953 A.2d at 143 ("This is but another replay of

14

similar cases where the plaintiff failed to allege with particularity any facts from which it could

15

be inferred that particular directors knew" of contrary facts); *Citigroup*, 964 A.2d at 134 ("the

16

Complaint does not sufficiently allege that the director defendants had knowledge that any

17

disclosures or omissions were false or misleading"); *In re Polycom Inc. Deriv. Litig.*, 78 F. Supp.

18

3d 1006, 1016 (N.D. Cal. 2015) ("Plaintiffs have not made any specific allegations about the

19

Director Defendants' state of mind at all, which is necessary to determine whether any allegedly

20

misleading statements were made with knowledge or bad faith.").[9]

21

**B.     Demand Is Not Excused As To Plaintiffs' Claim That The Yahoo Directors Consciously Failed To Prevent Ma's Alleged Misappropriation Of Alipay.**

22

23

The Opposition fails to show that any, much less a majority, of the Yahoo Directors face a

24

substantial likelihood of liability as to Plaintiffs' *Caremark* claims set forth in Counts II and III.

25

(¶¶ 188-93.)  There is no dispute that Plaintiffs must plead particularized facts showing "(a) the

26

27

[9]  *See also Accuray*, 757 F. Supp. 2d at 928 (same); *Zoumboulakis*, 2014 WL 3926565, at *10-12 (same); *Talley*, 2012 WL 946990, at *12  (same); *Maxwell Tech.*, 2014 WL 2212155, at *11 (same).

28

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

5

1    directors utterly failed to implement any reporting or information system or controls; *or*

2    (b) having implemented such a system or controls, consciously failed to monitor or oversee its

3    operations, thus disabling themselves from being informed of risks or problems requiring their

4    attention." *Stone*, 911 A.2d at 370 (articulating standard for *Caremark* claim); (MTD 7).

5         The first prong of *Stone* is no longer at issue, as Plaintiffs now concede that the Yahoo

6    Directors had implemented a reporting system.  (Opp. 15:6; MTD 7:24-8:5.)  Instead, Plaintiffs

7    argue under the second prong of *Stone* that the Yahoo Directors "face a substantial likelihood of

8    liability for their utter failure to monitor."  (Opp. 14.)  The Opposition contends that a duty to act

9    was triggered by proposed PBOC regulations and the threat that Ma would take preemptive action

10   even if the regulations were not finalized.  (Opp. 14-21.)  These arguments "with the benefit of

11   hindsight . . . seek[] to equate a bad outcome with bad faith."  *Stone*, 911 A.2d at 373; *In re*

12   *Polycom, Inc. Deriv. Litig.*, 78 F. Supp. 3d at 1015 ("Plaintiffs' complaint relies solely on the loss

13   as proof that the internal control or oversight was inadequate"); (MTD 9).  Plaintiffs' arguments,

14   however, are unsupported, speculative, or dependent on allegations refuted by Plaintiffs' own

15   sources.  Plaintiffs' contentions, therefore, fail to show that any Yahoo Director is interested in a

16   *Caremark* claim, as discussed in detail below.

17              **1.      Plaintiffs fail to plead any facts showing that the Yahoo Directors**
                          **ignored the proposed PBOC regulations in bad faith.**
18

19        The Opposition argues that contemplated PBOC regulations regarding foreign ownership

20   of payment processing companies "serv[ed] as a red flag" that should have caused the Yahoo

21   Directors, who were "following developments," to take action to prevent the misappropriation of

22   Alipay.  (Opp. 15-18, 21.)  Anyone following developments, however, would have seen that the

23   PBOC's draft regulations (¶¶ 77, 78), like many contemplated rules, never became law.

24   (MTD 9.)  The Opposition acknowledges this (Opp. vi, 4, 16, 17), as does the Complaint, which

25   concedes that it "remained unclear" even in 2012—a year after the events at issue in this

26   litigation—whether foreign ownership restrictions would affect the "potential viability of the

27   VIE" arrangement.  (¶ 138; MTD 9.)  The Yahoo Directors' not taking action in the face of draft

28   foreign laws that never came into force does not amount to "knowledge that their conduct was

1    legally improper." *Wood*, 953 A.2d at 141; (MTD 9-10.)

2         **2.    Plaintiffs fail to plead any facts showing that the Yahoo Directors
                   knew Ma would unilaterally misappropriate Alipay.**

3

4         Plaintiffs next contend that it is "beside the point" that the PBOC regulations never were

5    enacted.  (Opp. 16.)  The Opposition argues that the Yahoo Directors should have known that Ma

6    would unilaterally misappropriate Alipay.  One reason, according to Plaintiffs, is that he had

7    "'constantly' approached Yahoo about repurchasing its stake" in Alibaba.  (Opp. 17-18; ¶ 86.)

8    That allegation has nothing to do with the issues presented in this litigation.  Moreover, nothing

9    about Ma's rebuffed attempts to buy Yahoo's shares of Alibaba in an arms-length, and overt way

10   would signal that Ma would covertly and unilaterally misappropriate Alipay.

11        Next, the Opposition insists that the Yahoo Directors acted in bad faith by not exercising

12   Yahoo's rights under the SPCA to veto any disposition of Alibaba's core assets, which included

13   Alipay.  (Opp. 15.)  There is a good reason:  Ma never presented the termination of the VIE to the

14   Alibaba board.  As the Complaint itself alleges:  "Ma admits that he unilaterally terminated the

15   VIE without the formal consent of Alibaba's Board or Alibaba's major stakeholders as required

16   by the SPCA."  (¶ 95.)  He "made the decision based on his own wishes to get rid of the VIE, and

17   to inform the other two shareholders that they would be entering into compensation talks."  (Ex. 4

18   at 3.)[10]

19        That leaves Plaintiffs with conclusory allegations that nine of the ten Yahoo Directors—

20   Carol Bartz, Roy Bostock, Patti Hart, Susan James, Vyomesh Joshi, David Kenny, Arthur Kern,

21   Brad Smith, and Gary Wilson—"knew or were reckless in not knowing, that protecting the value

22   of Yahoo's investment in Alibaba was critically important to Yahoo."  (¶¶ 41-49.)  This

23   boilerplate also does not show bad faith as to any Yahoo Director, much less a majority of them.

24

25   ───────────────

[10]  For the same reason, there is no merit in Plaintiffs' argument that not appointing a second
26   director to the Alibaba board was a breach of the Yahoo Directors' duty of loyalty.  (Opp. 15.)
     One additional seat on the Alibaba board would not have mattered given that the issue was not
27   presented to the Alibaba board.  Plaintiffs say that the appointment Yahoo would have gotten
     more attention.  (Opp. 8.)  That's pure speculation and glosses over the fact that would have given
28   Yahoo just two of five seats on the Alibaba board.  (MTD 10.)

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

7

1    Lacking particularized allegations about the Yahoo Directors' knowledge and conscious

2  disregard of their oversight responsibilities, Plaintiffs focus their arguments on Jerry Yang's

3  supposed foreknowledge of Ma's intentions to misappropriate Alipay.  The Opposition insists that

4  "the Complaint alleges in detail what, how, and when Ma told the Board, through Yang, Yahoo's

5  Director on the Alibaba Board, that [he] would not wait for the PBOC regulations to be finalized"

6  to act.  (Opp. 16 (citing ¶¶ 9, 12, 79, 113, 120-21).)  Plaintiffs' assertion does not bear out.

7    There is no "detail" in the five paragraphs that the Opposition cites.  Not one of those

8  paragraphs alleges that Ma ever hinted, much less told Yang or the Alibaba board, that he would

9  unilaterally terminate the VIE.  Paragraph 79—the only paragraph of the five cited that even

10  purports to report Ma's words—alleges that Ma said: "from the first day I started Alipay, I

11  predicted the government would eventually control it."  Not only did this prediction never even

12  remotely come true, Ma conveyed no warning that he would act unilaterally in light of his fear.

13  (MTD 11.)  That Ma turned out to be wrong about the PBOC regulations further undercuts

14  Plaintiffs' suggestion that Ma had any expertise or insights that should have been heeded.  The

15  other four paragraphs cited by the Opposition add nothing.[11]

16    Moreover, Plaintiffs' argument about Ma forewarning Yang hinges on gross distortions

17  and is refuted by the very July 2011 CEM article that the Complaint repeatedly relies on.  (*E.g.*,

18  ¶¶ 10, 22, 79, 85, 86, 89, 90, 113.)  As the Opening Brief showed, Paragraph 94 of the Complaint

19  incorrectly asserts that Ma allegedly recounted a conversation with Yang about the termination,

20  and Yang "didn't give his opinion."  The CEM article, however, shows that Ma was recounting a

21  conversation with SoftBank's CEO, not Yang.  (MTD 10:27-11:6; *compare* ¶ 94 *with* Ex. 4 at 8-

22  9.)  In a footnote, the Opposition admits the inaccuracy, calling it "inadvertent."  (Opp. 21 n.13.)

23  Yet, on the same page of the Opposition and elsewhere, Plaintiffs press on with that inaccurate,

24  yet "inadvertent," allegation, as if it had not been disavowed.  (Opp. 21:10-12; Opp. 9:1-2.)

25

26  [11]  Paragraph 9 questions whether "Ma's unilateral transfer" surprised the Yahoo Directors, but
points to no facts showing it was not surprised.  Paragraph 12 recaps Plaintiffs' unsupported
27  argument as to why the never-enacted PBOC regulations were a "material threat."  Paragraphs
120 and 121 point out that Bartz and Yang declined to answer questions about Alipay while the
28  Framework Agreement was being negotiated.

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

8

1    Ma also undermines Plaintiffs' argument that Yang acted in bad faith when technical

2  ownership of Alipay was allegedly transferred in 2009 and 2010 and Yang did not act.  (Opp. 16.)

3  In the CEM article, Ma made clear that before January 2011, the contemplated PBOC restriction

4  on foreign ownership "wasn't such a big deal [because] we were proceeding based on the VIE."

5  (Ex. 4 at 14; *see also id.* at 1-2, 10, 15-16.)  Echoing their source material, Plaintiffs underscore

6  the significance of the VIE when they allege that, notwithstanding any transfers of technical

7  ownership in 2009 and 2010, Alibaba had "de facto control" of Alipay through a VIE

8  arrangement that gave it all the benefits of ownership through the first quarter of 2011.  (*Compare*

9  *id. with* ¶¶ 19-20, 93-95; Opp. 8:20, 21:9.)[12]  Before the VIE was terminated in the first quarter of

10  2011, the status quo was maintained in a manner that was, as the Complaint itself says, "common

11  practice" for businesses in China.  (¶ 93.)

12    Even if the Complaint adequately alleged Yang's foreknowledge of the above ***and*** his bad

13  faith (it does not), that would get Plaintiffs nowhere close to meeting their burden of showing a

14  majority of Yahoo's Directors could not consider a pre-suit demand.  That's because "Delaware

15  law does not permit the wholesale imputation of one director's knowledge to every other for

16  demand excusal purposes."  *Desimone v. Barrows*, 924 A.2d at 943; *Higher Educ. Mgmt. Grp.,*

17  *Inc. v. Mathews*, 2014 WL 5573325, at *11 (Del. Ch. Nov. 3, 2014) ("I cannot impute one

18  director's knowledge to all other directors"); *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165,

19  174-75 (D. Del. 2009) ("Delaware law is clear that demand will not be excused when a

20  Complaint includes particularized allegations for just one member of the Board."); (MTD 11).

21  The Opposition ignores this on-point authority barring imputation and counters with inapposite

22  cases that held that information about a company communicated to some directors was also

23  communicated to colleagues on the same board.  (Opp. 19.)[13]

24  _____

[12]  This Court previously recognized the VIE's significance too, stating:  "Alibaba Group
25  controlled Alipay through a series of agreements that created a VIE arrangement and consolidated
Alipay's financial results" and thereby had "'de facto control' of Alipay" until the first quarter of
26  2011.  *In re Yahoo!*, 2012 WL 3282819, at *3; *see also id.* at *12, *19.

27  [13]  In *Saito v. McCall*, 2004 WL 3029876, at *7 (Del. Ch. Dec. 20, 2004), the complaint alleged
that a company's controller had informed her board of the high risk nature of an upcoming audit
28  and that the Audit Committee also had been made aware of concerns relating to the audit.  In *In
re Abbott Labs. Deriv. S'holder Litig.*, 325 F.3d 795, 808-09 (7th Cir. 2003), plaintiffs alleged the

1        As a last resort, Plaintiffs try yet another theory of imputation—the so-called "core-

2   operations inference"—to argue that Yang's alleged foreknowledge of the misappropriation can

3   be imputed given the importance of Alipay to Alibaba.  (Opp. 20 n.11.)  The core-operations

4   inference is a pleading doctrine occasionally applied in securities cases governed by the Private

5   Securities Litigation Reform Act.  It permits courts to infer that corporate executives are aware of

6   "facts critical to a business's core operations or an important transaction generally [which] are so

7   apparent that their knowledge may be attributed to the company and its key officers."  *South*

8   *Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782-83 (9th Cir. 2008).

9        The core-operations inference is applied in "exceedingly rare" circumstances in securities

10  cases.  *Id.* at 785 n.3.  It has no application in this derivative action.  Indeed, courts have rejected

11  attempts to apply the doctrine in demand-futility cases and "have repeatedly held that a plaintiff

12  must allege more than that directors should have known or must have known about matters

13  relating to the corporation's 'core business.'"  *Accuray*, 757 F. Supp. 2d at 928; *see also Maxwell*

14  *Tech.*, 2014 WL 2212155, at *12 (same); *Brown v. Moll*, 2010 WL 4704372, at *3 (N.D. Cal.

15  Nov. 12, 2010) (same); *In re Coinstar Inc. S'holder Deriv. Litig.*, 2011 WL 5553778, at *4 (W.D.

16  Wash. Nov. 14, 2011) (same).  Even in securities cases, the core-operations inference only allows

17  a court to infer executives' knowledge about their own company's core operations—*see South*

18  *Ferry*, 542 F.3d at 782-83—not knowledge regarding the operations of a subsidiary belonging to

19  a separate, foreign company, as is the case here.[14]

20

21

---

22  specific knowledge of the board chairman and Audit Committee with respect to FDA compliance
    deficiencies by showing their  receipt of FDA warning letters and attestations of "knowledge and
23  responsibility for government regulation" in SEC forms.  The court inferred that other board
    members would have received the same warning information.

24  [14]  *Pfeiffer v. Toll*, 989 A.2d 683, 693 (Del. Ch. 2010), involved strikingly different facts not
    present here: the company's earnings projections were inconsistent with the company's "own
25  statements about the limits of [its] visibility into its future prospects"; the projections were
    contradicted by the *company's* own "internal and closely monitored metrics"; and the defendants
26  later "admitted . . . that their internal metrics had been trending down" at the same time they were
    making the inflated projections.  In *In re Biopure Corp. Deriv. Litig.*, 424 F. Supp. 305, 307-
27  08 (D. Mass. 2006), the court determined that the officers and directors of a pharmaceutical
    company must have had knowledge that the FDA had placed a clinical hold on the company's
28  principal drug (*id.* at 307), given FDA warnings that had been sent to the company.  *Id.*

1
2

### III.  DEMAND IS NOT EXCUSED AS TO PLAINTIFFS' CHALLENGE TO THE FRAMEWORK AGREEMENT.

3        Plaintiffs also fail to excuse demand as to their claim that the approval of the Framework

4  Agreement amounts to waste.  (¶¶ 204-08.)  Where a business decision is challenged, the *Aronson*

5  test requires plaintiffs to plead facts creating a reasonable doubt that either (1) directors are

6  disinterested and independent or (2) that the challenged transaction was a valid exercise of

7  business judgment.  (MTD 5, 11-13); *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

8  *Aronson*'s first prong is not relevant now, as the Opposition abandons any argument that the

9  Yahoo Directors were self-interested in the Framework Agreement or beholden to anyone who

10  was.  (*Compare* MTD 11-13.)[15]

11        Instead, the Opposition frames Plaintiffs' arguments under *Aronson*'s second prong.

12  (Opp. 26.)  Those arguments must overcome the business judgment rule, which presumes

13  decisions are "made in good faith and in the honest belief that the action taken was in the best

14  interests of the company."  *Aronson*, 473 A.2d at 814.  The presumption can only be overcome

15  where a complaint pleads facts showing that the "'challenged actions were . . . taken in bad

16  faith.'"  (MTD 14:6 (quoting *In re Gen. Motors Co*, 2015 WL 3958724, at *11).)

17        Here, Plaintiffs do not even try to argue that the Yahoo Directors acted in bad faith when

18  they approved the Framework Agreement.  Instead, Plaintiffs argue that the Framework

19  Agreement was on terms "far worse than Yahoo could have achieved" had it "not ceded critical

20  leverage to Ma."  (Opp. 26:6.)  The Delaware Court of Chancery recently rejected the same type

21  of merits-based challenge:

22
23
24
25

> Plaintiff's refrain that the members of the Board should have exercised the Company's leverage to secure a more favorable agreement . . . is precisely the type of "Monday morning quarterbacking" that this Court routinely rejects as insufficient to establish demand futility.  In the absence of well pleaded allegations of director interest or self-dealing, failure to inform

26     [15] Plaintiffs have waived their *arguments* as to disinterestedness and independence.  *Personal*

27  *Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009) (affirming district court holding that a party waived an argument by failing to raise it in opposition to motion to

28  dismiss); *In re Polycom*, 78 F.3d at 1014 & n.6 (failure to respond to opening brief argument constitutes waiver).

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

11

1
2

> themselves, or lack of good faith, the business decisions of the
> board are not subject to challenge because in hindsight other
> choices might have been made instead.

3

*Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 64-65 (Del. Ch. 2015)

4

(internal quotations and citations omitted).  That decision followed well-established principles of

5

Delaware demand-futility law that apply with equal force here.

6

　　　　Applying that standard, courts have repeatedly held that board decisions to litigate or

7

abstain from litigation by granting releases, are presumed valid unless the release serves no

8

rational corporate purpose.  *White*, 783 A.2d at 553-54 ("courts are ill-fitted to attempt to weigh

9

the 'adequacy' of consideration under the waste standard or, ex post, to judge appropriate degrees

10

of business risk"); *Brehm*, 746 A.2d at 264 (courts do not "measure, weigh, or quantify directors'

11

judgments").[16]  Plaintiffs certainly cite no authority that would support a different conclusion

12

here.  Nor do Plaintiffs point to any facts showing the Framework Agreement could have been

13

obtained without the release.  Yahoo's release of Alibaba and its board members (including

14

Yang) yielded benefits, including resolution of the uncertainty relating to Alipay's restructuring,

15

and Yahoo's pro rata share of between $2-6 billion in consideration.  Plaintiffs thus fail to show

16

the release achieved "no corporate purpose" or that "the corporation received no consideration at

17

all" in exchange.  *White*, 783 A.2d at 554 & n.36; *In re HP Deriv. Litig.*, 2012 WL 4468423, at *5

18

(N.D. Cal. Sept. 25, 2012) ("A decision made by a loyal and informed board will not be

19

overturned by courts unless it 'cannot be attributed to any rational business purpose.'") (citations

20

and quotations omitted).

21

　　　　Plaintiffs' disagreement with the Yahoo Directors does not show waste, which "'arise[s]

22

only in the rare, unconscionable case where directors irrationally squander or give away corporate

23

assets.'"  *In re the Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. 2006) (quoting *Brehm*,

24

746 A.2d at 263).  Waste cannot arise, as is the case here, if there "is any substantial

25

consideration received by the corporation."  *White*, 783 A.2d at 554 & n.36.  It is an "onerous

26

27
28

---

[16]  *See also Zucker v. Andreessen*, 2012 WL 2366448, at *8-9 (Del. Ch. June 21, 2012)
(challenged release did not excuse demand); *In re HP Deriv. Litig.*, 2012 WL 4468423 (N.D. Cal.
Sept. 25, 2012) (same).

1    standard." (*Id.*) Too onerous, it seems, for Plaintiffs to confront, as their Opposition does not

2    even respond to, much less refute, the Opening Brief's showing that Plaintiffs do not excuse

3    demand on this ground. (MTD 14-15.)

4           Finally, in a single line, the Opposition claims that the Yahoo Directors were uninformed

5    when approving the Framework Agreement. (Opp. 26:14.) This, like Plaintiffs' other

6    contentions, is not supported by any facts, which is fatal. *See In re J.P. Morgan Chase & Co.*

7    *S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005) (no facts alleged showing that board "was not

8    provided with information from which it could make a proper decision"); *In re HP Deriv. Litig.*,

9    2012 WL 4468423, at *9 ("Plaintiffs fail to plead any facts raising a reasonable doubt that the

10   Board acted on an informed basis."); *In re Polycom,* 78 F. Supp. 3d. at 1018-20. Further,

11   Plaintiffs do not dispute that they inspected the Yahoo board minutes relating to the approval of

12   the Framework Agreement. As held elsewhere, the failure to "turn up any useful facts" to support

13   arguments following inspection further undermines Plaintiffs' claim. (MTD 14 (quoting *Stone v.*

14   *Ritter*, 2006 WL 302558, at *1 (Del. Ch. Jan. 26, 2006), *aff'd,* 911 A.2d 362 (Del. 2006)).)

15   **IV.    THIS ACTION SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND.**

16          In a footnote, Plaintiffs ask for leave to amend. (Opp. 30 n.22.) Plaintiffs do not,

17   however, specify any facts that they would add to an amended complaint. That is not surprising

18   given that Plaintiffs have had over four years to gather facts, and opted, when the stay of this

19   action was lifted in May 2015, to stand on the Complaint that they filed in March 2012, before

20   they had completed inspection of Yahoo's books and records on the subject, and before the Class

21   Action was dismissed. (MTD 15.)

22          Plaintiffs are silent in response to Yahoo's showing that any amended complaint would

23   have to show demand futility with respect to Yahoo's current board. *Braddock v. Zimmerman*,

24   906 A.2d at 776. Pleading demand futility would be impossible given that, with one exception,

25   all of Yahoo's current directors joined the board ***after*** the events at issue in this litigation. (MTD

26   15; Ex. 14.) The Complaint's defects thus cannot be cured, rendering amendment futile. *See In*

27   *re Silicon Graphics*, 183 F.3d at 991 (affirming dismissal of derivative action without leave to

28   amend where defective futility allegations could not be cured).

1    Plaintiffs' footnote alternatively asks this Court to retain jurisdiction so that Plaintiffs can

2    make a demand on the Yahoo's current board.  (Opp. 30 n.22.)  Plaintiffs could have made a

3    demand over four years ago, or while the stay was pending, or instead of standing on their stale

4    Complaint when the stay was lifted.  They elected not to do so, because it would have fatally

5    undermined the basis of the demand-futility allegations in their Complaint.  As the Delaware

6    Supreme Court has held:  "Where a demand has actually been made, the stockholder making the

7    demand concedes the independence and disinterestedness of a majority of the board to respond."

8    *Rales v. Blasband*, 634 A.2d 927, 936 & n.12 (Del. 1993) (citing cases).

9    Plaintiffs' hope for retained jurisdiction assumes that any demand that they make in the

10   future would be refused wrongfully by Yahoo's current board, giving rise to a different type of

11   derivative case where "the only issues to be examined are the good faith and reasonableness of

12   the board's investigation" in response to the demand.  *Spiegel v. Buntrock*, 571 A.2d 767, 777

13   (Del. 1990).  The doors to federal court are not open to hypothetical claims that might (or might

14   not) arise depending on the outcome of a series of future events and decisions.  Plaintiffs' fleeting

15   argument and citation to cases where jurisdiction was retained (mostly by state courts)—either by

16   stipulation or without any analysis[17]—does not explain how retention of jurisdiction would

17   comport with Article III of the Constitution if no case or controversy remains alive.  Comments

18   from the Ninth Circuit cast doubt on the propriety of exercising jurisdiction where a demand has

19   not been made.  *See Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008) ("unless we determine

20   that a proper demand was made, there is no lawsuit over which to exercise jurisdiction").

21   Even if jurisdiction could be retained on some ground that has not been articulated, the

22   Court should decline to exercise it unless the two remaining Plaintiffs demonstrate that they still

23

24

---

25   [17]  *Bender v. Schwartz*, 917 A.2d 142 (Md. Ct. Spec. App. 2007), offers no support to Plaintiffs.
     There, the court had dismissed the complaint with leave to amend, and the plaintiffs filed an
26   amended complaint *after* they had initiated a demand on the board.  The court then stayed
     proceedings as to the amended complaint until the corporation decided whether to accept or reject
27   the demand.  Thus, the court was not retaining jurisdiction to allow for a demand to be made but
     rather had jurisdiction to allow for the dismissed complaint to be amended, during which time
28   plaintiffs also made a demand.  *Id.* at 149-50.

own Yahoo stock, in compliance with the continuous ownership requirement.[18] To date,

Plaintiffs have refused to do so, even after Yahoo asked for assurance of that ownership when one

of the other court-appointed Plaintiffs recently withdrew from this litigation after he lost standing.

(Doc. 73.)

### CONCLUSION

For the reasons set forth above and those articulated in the Opening Brief, the Court

should dismiss this action without leave to amend.

Dated:  November 20, 2015                    MORRISON & FOERSTER LLP


By:    /s/ Mark R.S. Foster
                MARK R.S. FOSTER
                Attorneys for Nominal Defendant
                YAHOO! INC.

---

[18]  Rule 23.1 requires "that a derivative plaintiff be a shareholder at the time of the alleged
wrongful acts" and also "that the plaintiff retain ownership of the stock for the duration of the
lawsuit—the so-called 'continuous ownership requirement' . . . . If a shareholder is divested of his
or her shares during the pendency of litigation, that shareholder loses standing." *Quinn v. Anvil*,
620 F.3d at 1012.

REPLY I/S/O YAHOO'S MOTION TO DISMISS BASED ON PLAINTIFFS' FAILURE TO PLEAD DEMAND FUTILITY
Master Docket No. 3:11-CV-03269-CRB
sf-3596136

15