1
2
3
4
5
6
7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   In re Yahoo! Inc. Shareholder Derivative        CASE NO. 11-cv-3269-CRB
     Litigation
12   _____/     **ORDER GRANTING MOTION TO**
                                                     **DISMISS WITH PREJUDICE**
13

14        Plaintiffs Iron Works Mid-South Pension Fund and Irving Lassoff ("Plaintiffs"),

15   derivatively on behalf of Yahoo! Inc. ("Yahoo"), bring this action against Nominal

16   Defendant Yahoo and ten individually named defendants who either served as audit

17   committee members or directors on the Yahoo Board during the relevant period (collectively,

18   "Defendants").[1]  Plaintiffs state four claims for relief against Defendants: (1) the Yahoo

19   Directors breached their fiduciary duty by disseminating false and misleading information;

20   (2) the Yahoo Directors breached their fiduciary duty by consciously disregarding their duty

21   to oversee and preserve company assets; (3) the Yahoo Directors breached their fiduciary

22   duty by failing to maintain internal controls; and (4) the Yahoo Directors wasted corporate

23   assets.[2]  See Verified Consolidated Shareholder Derivative Complaint ("Complaint") (dkt.

24   46) ¶¶ 184–208.

25

26        [1]   The individually named Yahoo Directors are Patti S. Hart ("Hart"), Susan M. James
     ("James"), Vyomesh Joshi ("Joshi"), Gary L. Wilson ("Wilson")—collectively, the "Audit Committee
27   Defendants"— Carol Bartz ("Bartz"), Roy J. Bostock ("Bostock"), David Kenny ("Kenny"), Arthur H.
     Kern ("Kern"), Brad D. Smith ("Smith"), and Jerry Yang ("Yang").  All ten Defendants are referred to
28   collectively herein as the "Yahoo Directors."

        [2]   Plaintiffs also assert three claims against Jack Ma for alleged aiding and abetting,
     misappropriation, and unjust enrichment.  See Compl. ¶¶ 198–203, 209–14, 215–18.  Plaintiffs have
     never served Ma in this action, nor have they attempted to do so.  See Statement (dkt. 53) at 1–2.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Defendants move to dismiss the Complaint on two grounds: (1) Plaintiffs' failure to plead demand futility, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 23.1, see Nominal Defendant Mot. to Dismiss ("Yahoo MTD") (dkt. 68); and (2) Plaintiffs' failure to state claims for breach of fiduciary duty and corporate waste, pursuant to Federal Rule of Civil Procedure 12(b)(6), see Individual Directors' Mot. to Dismiss ("Director MTD") (dkt. 69).  For the following reasons, the Court GRANTS both motions.

## I.   FACTUAL BACKGROUND[3]

### A.   Yahoo's Investment in Alibaba

Yahoo is a global digital media company incorporated in Delaware.  See Compl. ¶ 39. In 2005, Yahoo invested $1 billion in Alibaba Group Holding Limited ("Alibaba"), an e-commerce company based in China, in exchange for 40% of its outstanding shares, pursuant to a Stock Purchase and Contribution Agreement ("SPCA").  Compl. ¶ 5; Opp. (dkt. 76) at 1. Alibaba has three primary shareholders: Yahoo; Softbank Corp. ("Softbank"), a Japanese corporation; and Jack Ma, a Chinese businessman.  Compl. ¶ 16. During the relevant period, Alibaba was managed in part by Ma, who served as Alibaba's CEO and Chairman of its board of directors.  Id. ¶ 50.  Yahoo reported its share of Alibaba's quarterly results in its periodic reports filed with the U.S. Securities and Exchange Commission ("SEC").  Id. ¶ 72.

According to the Complaint, Yahoo's Alibaba investment soon became the company's most valuable asset.  Id. ¶¶ 1, 2, 66, 70; Opp. at 1.  The value of Yahoo's interest in Alibaba.com, one of Alibaba's core assets, alone ranged from $2.3 to $3 billion.  Compl. ¶ 5. By 2011, some analysts estimated that the Alibaba investment was worth $11.45 per share—97% of Yahoo's August 10, 2011 closing price—while others concluded that it exceeded "Yahoo's entire current market value."  Id. ¶¶ 70, 97.

---

[3]   The facts in this section are drawn from Plaintiffs' allegations (which are substantially similar to those in the Class Action, see Ex. 11 (Class Action Complaint)), documents subject to the Request for Judicial Notice filed by Yahoo and the Yahoo Directors, see Request, and this Court's previous summary of the relevant background in its dismissal of the Class Action.  See In re Yahoo!, No. C 11-02732 CRB, 2012 WL 3282819, at *1–5 (N.D. Cal. Aug. 10, 2012).

United States District Court
For the Northern District of California

1    Plaintiffs allege that the Yahoo Directors knew that Yahoo's value to shareholders

2  "hinged entirely" on its ability to retain and ultimately monetize the value of its Alibaba

3  holdings. <u>See</u> <u>id.</u> ¶ 6, 71–73; Opp. at 1. Yahoo's Board ensured that every SEC Form 10-K

4  and 10-Q filed after the Alibaba acquisition reported Alibaba's financial results, the dollar

5  amount of Yahoo's equity investment, and its impact on earnings. Compl. ¶ 72. Plaintiffs

6  allege that Defendant Bartz, Yahoo's then CEO, assured shareholders that Defendants were

7  "always evaluating" Yahoo's investment in Alibaba with the assistance of Defendant Yang,

8  Yahoo's co-founder and a Yahoo director, and a "team of very strong financial experts." <u>Id.</u>

9  ¶ 73.

10    Under the SPCA, the Yahoo Directors negotiated specific provisions to ensure that

11  Yahoo's officers and directors would be informed of material developments regarding

12  Alibaba. <u>See</u> Opp. at 2. First, the SPCA provided that Alibaba's board would initially have

13  four members, and Yahoo and Softbank would each be permitted to appoint one director. <u>Id.</u>

14  ¶ 67. In October 2010, Yahoo was permitted to appoint a second director to Alibaba's board,

15  at which time it appointed former Yahoo Chairman and CEO Yang (a.k.a. "Chief Yahoo!").

16  <u>Id.</u> ¶ 69, 71. Second, Yahoo secured terms obligating Alibaba and its Chairman and CEO,

17  Jack Ma, to "use reasonable efforts to preserve intact [Alibaba's] present business

18  organization . . . to maintain all of [Alibaba's tangible assets[;]" to refrain from selling or

19  transferring any of Alibaba's assets; and to "promptly advise Yahoo in writing of any event,

20  occurrence, fact, condition, change, development, or effect" that "would reasonably be

21  expected to have or result in . . . a breach of the covenant not to sell any assets with a value in

22  excess of $500,000, other than inventory in the ordinary course of business." <u>Id.</u> ¶ 67. And

23  third, Yahoo secured the right to veto any disposition of any of Alibaba's "Core Businesses."

24  <u>Id.</u> ¶ 68. Plaintiffs allege that Alibaba's subsidiary Alipay, an e-commerce payment process

25  system similar to eBay's PayPal, was among the Core Businesses subject to these

26  restrictions. <u>Id.</u> ¶¶ 2, 66, 68.

27

28

United States District Court
For the Northern District of California

**B.      Alibaba's VIE Arrangement with Alipay**

According to the Complaint, Alibaba owned and controlled several companies.  Id. ¶ 2.  These companies included Taobao—an online marketplace for consumers similar to eBay—and Alipay.  Id.  Alibaba also owned a majority interest in the publicly traded Alibaba.com.  Id. ¶ 102.

In 2005, the People's Bank of China ("PBOC") proposed regulations that would restrict the equity that foreign investors would be permitted to hold in non-financial institutions providing third-party services, like Alipay.  ¶¶ 7–13, 74–85.  Revisions to the proposed regulations provided that, beginning in September 2010, non-financial institutions would be required to submit extensive registration materials to the PBOC and to obtain a License of Payment Services to operate in China.  Id. ¶¶ 11–15, 80–82.

The Complaint states that in China, Internet businesses are generally subject to regulations requiring that they be owned by Chinese nationals.  Id. ¶ 93.  To meet these requirements, Internet businesses with non-Chinese investors are often formally owned by Chinese nationals, but are structured with contractual agreements that give control and economic benefits to the non-Chinese investors.  Id.  These arrangements are known as Variable Interest Entities ("VIEs").  Id.  With a VIE structure, non-Chinese investors can become the primary beneficiaries of the VIE's revenues, earnings, and profits, and consolidate the VIE's financial results with their own.  Id.

Plaintiffs allege that, through a series of stock transfers beginning in June 2009, Alibaba's technical ownership of Alipay was transferred from Alibaba to Zhejiang Alibaba E-Commerce Company Ltd. ("Zhejiang"), a Chinese company majority-owned by Ma.  Id. ¶ 86–90.  Plaintiffs, nonetheless, retained "de facto control" of Alipay through Zhejiang under a VIE arrangement through the first quarter of 2011.  Id. ¶ 19.  According to the Complaint, the VIE allowed Alibaba, as the non-Chinese investor, to consolidate Alipay's financial results with its own.  Id. ¶ 19, 110.

Plaintiffs claim that news of PBOC's proposed regulations did—or should have—put the Yahoo Directors on notice of Ma's impending "misappropriation" of Alipay.  Opp. at

United States District Court
For the Northern District of California

4–9.  Plaintiffs allege that Ma "made clear to the Yahoo [Directors], through Yang," that Ma would not wait for the PBOC regulations to be finalized to ensure that foreign ownership did not interfere with Alipay's bid for a license to operate in China.  Compl. ¶ 79, 89.

**C.    On March 31, 2011, Alibaba Notified Yahoo the VIE Was Terminated**

Alibaba's VIE-based control over Alipay ended in the first quarter of 2011.  See id. ¶¶ 19, 110.  On March 31, 2011, Alibaba notified Yahoo that 100 percent of the ownership of Alipay had been transferred to Zhejiang and that Alibaba deconsolidated Alipay's financial results effective in the first quarter of 2011.  Id. ¶ 110.  Plaintiffs allege that Ma misappropriated Alipay for himself and unilaterally terminated the VIE without the approval of the Alibaba board.  Id. ¶¶ 1, 19, 95, 209–14.  Ma allegedly did not seek or obtain the approval of Yahoo or Softbank, which was required under the SPCA that governed the relationship among Alibaba, Yahoo, and Softbank.  Id. ¶¶ 19, 67, 85, 95, 135.

**D.    On May 10, 2011, Yahoo Disclosed that Alibaba Had Restructured Alipay**

Yahoo was told on March 31, 2011 that Alipay had been restructured, after which Yahoo investigated the matter.  Id. ¶ 110.  On May 10, 2011, in its next quarterly filing with the SEC, Yahoo disclosed that "[t]o expedite obtaining an essential regulatory license, the ownership of Alibaba's online payment business, Alipay, was restructured so that 100 percent of its outstanding shares are held by a Chinese domestic company," majority-owned by Ma.  Id. ¶ 20; Ex. 3 (dkt. 70-3) at 8.

Two days later, Yahoo issued a press release in which it explained that it had been notified by Alibaba on March 31, 2011, of the transfer of Alipay stock, which Yahoo said "occurred without the knowledge or approval of the Alibaba Group board of directors or shareholders."  Compl. ¶ 110.  Yahoo "disclosed this restructuring in its 10-Q after discussions with Alibaba Group and obtaining a better understanding of this complex situation."  Id.  Yahoo stated that "ongoing negotiations with Alibaba" about the issue continued.  Id.

United States District Court
For the Northern District of California

### E.      On July 29, 2011, Yahoo Entered into the Framework Agreement

On July 29, 2011, Yahoo entered into the Framework Agreement with Alibaba and other relevant parties to resolve the outstanding issues related to Alipay.  Id. ¶ 23.  The Framework Agreement is a complex, multi-party contract that sets forth, among other things, the terms of an ongoing commercial relationship between Alibaba and Alipay, preferential payment terms for Taobao for at least 50 years, and the payment to Alibaba of between $2 billion and $6 billion in any future liquidity event for Alipay, such as an Initial Public Offering ("IPO").  Id. ¶ 127; Ex. 5 (dkt. 70-5); Ex. 6 (dkt. 70-6).  Plaintiffs allege that the Framework Agreement ceded to Ma control over the terms and conditions under which a triggering liquidity event might occur.  Id. ¶¶ 23–29, 125–38.  The Framework Agreement also left it to Ma to determine how Alipay would provide Alibaba the services and fees to which Alibaba had been entitled before the transfer to Zhejiang.  Id.  Moreover, the Framework Agreement provided that Alibaba's board would ratify actions connected to the restructuring of Alipay's ownership and the termination of prior control agreements, and that Ma and Yang would be released from any claims related thereto.  Id. ¶¶ 132–33.

### F.      This Court Dismissed the Related Securities Class Action

In June 2011, purchasers of Yahoo stock filed a Class Action.  See In re Yahoo! Inc. Sec. Litig., No. C-11-02732-CRB, 2012 WL 3282819, at *1 (N.D. Cal. Aug. 10, 2012).  This Court dismissed the Class Action, holding that it was "hard to see how a statement [on an April 19, 2011 earnings call] that expressly does not value the privately held businesses affirmatively creates an impression that the value is different in a material way than the actual value."  Id. at *10.  The Court also held that Yahoo had no duty on May 10, 2011, to say more than it did about the Alipay restructuring, explaining that Yahoo's disclosures made clear that the "state of affairs [was] still in flux," given the "ongoing discussions regarding the terms of the restructuring."  Id. at *12.  This Court rejected the plaintiffs' argument that Yahoo had a duty to correct statements made in 2010 and 2011.  Id. at *13–19.  The Ninth Circuit affirmed dismissal of the Class Action.  See In re Yahoo! Inc. Sec. Litig., 12-17080, 2015 WL 2330190 (9th Cir. May 15, 2015).

**United States District Court**
For the Northern District of California

### G.    Summary of Allegations in the Complaint

Alipay was one of Alibaba's core businesses, valued between $5 billion to $16 billion by analysts.  Opp. at vi.  After news broke about PBOC's proposed regulations, Ma indicated to Yang that he would not wait for the Chinese regulations to be finalized before he would act to divest Alibaba of Alipay.  Id.  Despite the escalating threats to Yahoo's "single most important asset," the Yahoo Directors allegedly failed until 2011 to take any action to invoke explicit rights to information and to veto Ma's proposed disposition of Alipay.  Id. at vii.

Plaintiffs allege that pre-suit demand on the Yahoo Board would have been futile because the Yahoo Directors face a substantial likelihood of liability for breaching their fiduciary duties of loyalty and good faith by (1) failing to act in the face of a known duty to act to prevent and/or monitor material threats to Yahoo's most important asset; and (2) failing for years to accompany their statements about Yahoo's stake in Alibaba with disclosures regarding the regulatory risks to Yahoo's interest in Alipay or the related threat that Ma would cause Alibaba to divest Alipay.  Id. at viii.  Further, Plaintiffs allege that pre-suit demand is excused because there is reason to doubt that the Board's decision to release Yang—through the Framework Agreement and for no consideration or other rational business purpose—was a valid exercise of business judgment.  Id.

### H.    Defendants' Motions to Dismiss

Defendants now move to dismiss the Complaint for (1) failure to plead demand futility and (2) failure to state claims for breach of fiduciary duty and corporate waste.  See Yahoo MTD; Director MTD.  Defendants argue that demand is not excused because Plaintiffs fail to adequately plead that the Yahoo Directors face a substantial likelihood of liability for failing to prevent Ma's alleged misappropriation of Alipay or that a majority of the Yahoo Directors received a personal benefit from the Framework Agreement not shared by others, or were beholden to anyone who did.  Yahoo MTD at viii.

Defendants further argue that the Complaint should be dismissed because Plaintiffs fail to state a claim against any Yahoo Director.  Id.  According to Defendants, Plaintiffs do not plead the role, if any, of each Yahoo Director in making allegedly misleading statements,

United States District Court
For the Northern District of California

or any facts showing that any Yahoo Director made a misleading statement with scienter.  Id.
Next, Defendants contend that Plaintiffs fail to state a claim for breach of fiduciary duty
relating to the Yahoo Board's alleged failure to prevent misappropriation of Alipay because
Plaintiffs do not show that the Directors acted in "bad faith" and that they "knew they were
not discharging their fiduciary duties."  Id.  Finally, Defendants argue that Plaintiffs fail to
state claim for corporate waste because the Yahoo Board's approval of the Framework
Agreement did not constitute a bad-faith squandering of corporate assets.  Id.

## II.   REQUEST FOR JUDICIAL NOTICE

In support of their motions to dismiss, Defendants request that the Court take judicial
notice of certain documents attached to the Declaration of Mark R.S. Foster in Support of
Defendants' Motions to Dismiss ("Foster Declaration") (dkt. 70).  See Request (dkt. 71).
Defendants request that the Court take judicial notice of Exhibits 1 through 14[4] attached to
the Foster Declaration because they are either incorporated by reference to the Complaint or
are otherwise subject to judicial notice.  See Request.  Federal Rule of Evidence 201
authorizes a court to take judicial notice of facts that are "not subject to reasonable dispute"
and "can be accurately and readily determined from sources whose accuracy cannot
reasonably be questioned."  Fed. R. Evid. 201(b).  Judicial notice is mandatory if "a party
requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

Defendants chart how eleven of Defendants' fourteen Exhibits are referenced in the
Complaint.  See Response (dkt. 81) at 1–2.  Plaintiffs do not dispute that these Exhibits are
referenced in the Complaint.  See Response at 1.  The Court may consider these eleven
Exhibits because a court may consider any documents "'whose contents are alleged in a
complaint and whose authenticity no party questions, but which are not physically attached to
the plaintiffs' pleading.'"  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In
re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999).

The Exhibits not incorporated by reference—Exhibits 1, 12, and 14—are also subject

---

[4]   All subsequent references to "Exhibits" or "Ex." refer to Exhibits 1 through 14 attached to the Foster Declaration.

**United States District Court**
For the Northern District of California

1   to judicial notice.  First, as Defendants assert, Exhibit 1—Yahoo's articles of

2   incorporation—is subject to judicial notice, as courts routinely take judicial notice of

3   certificates of incorporation when ruling on motions to dismiss in derivative actions.  <u>See</u>

4   <u>Brown v. Moll</u>, No. C 09-05881 SI, 2010 WL 2898324, at *1 n.1, *4 (N.D. Cal. July 21,

5   2010); <u>In re Computer Scis. Corp. Deriv. Litig.</u>, No. CV 06-05288 MRP, 2007 WL 1321715,

6   at *7 n.5 (C.D. Cal. Mar. 26, 2007) (taking judicial notice of articles of incorporation), <u>aff'd</u>

7   <u>sub nom.</u> <u>Laborers Int'l Union of N. Am. V. Bailey</u>, 310 F. App'x 128 (9th Cir. 2009).

8   Second, Exhibit 12—Alibaba's Prospectus—is subject to judicial notice because it is an SEC

9   filing not offered for the truth of the matter asserted, but rather offered to show simply that a

10  statement was made.  Response at 81.  Third, the Court takes notice of Exhibit 14—Yahoo's

11  website listing its current directors—because it is a more recently published version of the

12  same information contained in Exhibit 13 at 16, which is incorporated by reference into the

13  Complaint, and because it is not subject to reasonable dispute.  <u>Id.</u> at 4; <u>Knievel</u>, 393 F.3d at

14  1076.  For the foregoing reasons, I recommend that the Court take judicial notice of Exhibits

15  1 through 14 attached to the Foster Declaration.

16  **III.     MOTION TO DISMISS FOR FAILURE TO PLEAD DEMAND FUTILITY**

17           Plaintiffs acknowledge that no pre-suit demand was made upon Yahoo's Board of

18  Directors.  <u>See</u> Compl. ¶ 161–65.  Defendants move to dismiss the Complaint on the grounds

19  that Plaintiffs were required to create a reasonable doubt that a majority of the Board could

20  have remained independent and disinterested in responding to their demand, and Plaintiffs

21  have failed to adequately plead that a majority of the Directors was incapable of responding

22  to a demand.  <u>See</u> Yahoo MTD at 6–13.  For the following reasons, the Court concludes that

23  Plaintiffs have failed to establish demand futility and GRANTS Defendants' motion.

24           **A.     <u>Legal Standard</u>**

25           Federal Rule of Civil Procedure 23.1 governs derivative actions, <u>see</u> <u>Rosenbloom v.</u>

26  <u>Pyott</u>, 765 F.3d 1137, 1148 (9th Cir. 2014), and requires a plaintiff to "allege with

27  particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires

28  from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not

United States District Court
For the Northern District of California

making the effort." Fed. R. Civ. P. 23.1(b)(3).  Rule 23.1, however, involves the adequacy of a plaintiff's pleadings; "[t]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief."  Rosenbloom, 765 F.3d at 1148 (internal citation omitted).[5]  Yahoo is a Delaware corporation and Delaware law therefore applies.  See Kamen v. Kemper Fin. Serv., Inc., 500 U.S. 108–09 (1991) ("[A] court that is entertaining a derivative action . . . must apply the demand futility exception as defined by the State of incorporation.").

In the context of a pre-suit demand, directors are entitled to a presumption that they fulfilled their fiduciary duties, and "the burden is upon the plaintiff in the derivative action to overcome that presumption" with particularized factual allegations.  Beam v. Stewart, 845 A.2d 1040, 1048–49 (Del. 2004); see also Weiss v. Swanson, 948 A.2d 433, 441 (Del. Ch. 2008) (The requirement of particularized facts means that a plaintiff's pleading burden in the demand futility context is "more onerous" than that required to withstand a Rule 12(b)(6) motion) (internal quotation marks omitted).[6]

## B.   Controlling Delaware Law

The Delaware Supreme Court has articulated two tests for determining whether a complaint sufficiently pleads demand futility: the Aronson test and the Rales test.  See Aronson v. Lewis, 473 A.2d 805 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ("the Aronson test"); Rales v. Blasband, 634 A.2d 927 (Del. 1993) ("the Rales test").  Delaware courts apply the Aronson test if the derivative action challenges a particular decision or transaction of the corporation's board of directors.  See Wood v. Baum, 953 A.2d 136, 140 (Del. 2008).  Under Aronson, the plaintiff must plead

---

[5]   The Ninth Circuit has clarified that "the adequacy of [the] pleadings is measured by federal law—in particular, Rule 23.1.  The function of the demand futility doctrine, however, is a matter of substance, not procedure," and thus "for instance, although federal law governs the degree of detail that the plaintiff must furnish when it gives its reasons for not obtaining the action or not making the effort, state law will determine whether those reasons are sufficient."  See Rosenbloom, 765 F.3d at 1148 n.10 (quoting Westmoreland Cty. Emp. Ret. Sys. v. Parkinson, 727 F.3d 719, 721–22 (7th Cir. 2013)).

[6]   At the motion to dismiss stage, a court considers only the well-pleaded allegations of the complaint, the documents incorporated into the complaint by reference, and judicially-noticed facts.  Weiss, 948 A.2d at 441.

particularized facts that create a reasonable doubt that either (1) the directors were disinterested or independent, or (2) the challenged transaction was the product of a valid exercise of business judgment.  See 473 A.2d at 812.

On the other hand, Delaware courts apply Rales if the subject of the derivative suit is not a business decision of the board but rather a violation of the board's oversight duties.  See Wood, 953 A.2d at 140; see also Guttman v. Huang, 823 A.2d 492, 499–500 (Del. 2003) (applying Rales where the plaintiffs alleged that director defendants individually breached their fiduciary duties to the corporation and failed "to ensure that [the corporation] had in place the financial control systems necessary to ensure compliance with applicable accounting standards").  The Rales test simply requires the plaintiff to offer particularized allegations to create a reasonable doubt as to the first prong of the Aronson test:

> Thus, a court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.  If the derivative plaintiff satisfies this burden, then demand will be excused as futile.

Rales, 634 A.2d at 934; see also In re Bidz.com, Inc. Deriv. Litig., 773 F. Supp. 2d 844, 855 (C.D. Cal. 2011).

Plaintiffs argue that demand would have been futile for two reasons: (1) Defendants would have faced a substantial likelihood"of personal liability by complying with Plaintiffs' demand to pursue litigation; and (2) there was reason to doubt that the Defendants' decision to release Defendant Yang for no consideration or other rational business purpose was a valid exercise of business judgment.  See Opp. at 12–26.  The Court concludes that both arguments fail for the following reasons.

**C.      Yahoo Directors' Alleged Inaction Does Not Excuse Pre-Suit Demand**

Plaintiffs claim demand is excused because the Yahoo Directors issued allegedly false statements and failed to oversee Yahoo's investment in Alibaba.  Compl. ¶¶ 167–72, 186. These purported grounds for excusing demand must satisfy the Rales test.  See In re General Motors Co. Deriv. Litig., No. 9627-VCG, 2015 WL 3958724, at * 13 (Del. Ch. June 26,

United States District Court
For the Northern District of California

2015) (oversight claims);  In re Citigroup S'holder Deriv. Litig., 964 A.2d 106 (Del. Ch. 2009) (claims of oversight and false statements).

### 1.   Allegedly False Statements

Plaintiffs allege that the Yahoo Directors face a "substantial likelihood of liability" for making or allowing to be made "improper statements concerning Yahoo's investment in Alibaba" between April 2010 and May 2011.  See Compl. ¶¶ 172, 186.  Defendants respond that Plaintiffs fail to show that any Yahoo Director, much less a majority, faces such a likelihood of liability.  Yahoo Reply (dkt. 79) at 2.  To succeed on this claim under Rales, Plaintiffs must plead "fraudulent," "illegal," or "bad faith conduct," and particularized facts demonstrating that the Directors acted with scienter.  Wood, 953 A.2d at 141.  This requires that Plaintiffs allege facts showing that the directors "deliberately misinform[ed] shareholders about the business of the corporation."  Citigroup, 964 A.2d at 132.

As an initial matter, Plaintiffs challenge the same statements that were at issue in the Class Action.  Compare Compl. ¶¶ 20, 72, 73, 100–07 with Ex. 11 ¶¶ 85, 119–21, 135, 146. This Court, as affirmed by the Ninth Circuit, concluded that those statements were not materially misleading.  See In re Yahoo!, 2012 WL 3282819, at *1.  Moreover, Plaintiffs fail to plead facts showing that each Yahoo Director made the allegedly misleading statements with scienter.  See Citigroup, 964 at 132.  Plaintiffs do not point to any particularized allegations showing that any of the Yahoo Directors, let alone a majority, "knew that they were not discharging their fiduciary obligations"—in other words, Plaintiffs fail to establish that the Directors acted in "bad faith."  See Stone ex rel. AmSouth Bancorp v. Ritter, 911 A.2d 362, 366–67, 370 (Del. 2006).  The Court thus concludes that Plaintiffs have failed to establish demand futility.  See id.; Wood, 953 A.2d at 143 ("This is but another replay of similar cases where the plaintiff failed to allege with particularity any facts from which it could be inferred that particular directors knew" of contrary facts); Citigroup, 964 A.2d at 132 ("the Complaint does not sufficiently allege that the director defendants had knowledge that any disclosures or omissions were false or misleading").

**United States District Court**
For the Northern District of California

Furthermore, Plaintiffs fail to show "sufficient board involvement in the preparation of the [challenged] disclosures." Id. at 134. Plaintiffs assert that the Yahoo Directors "signed" or were involved in "reviewing" the disclosures at issue. See Opp. 23–24 & n.17. Conclusory allegations like this, however, do not excuse demand under Delaware law. See Wood, 953 A.2d at 142 (holding that the "Board's execution" of challenged statements was not enough to show sufficient involvement); Citigroup, 964 A.2d at 134, 133 n.88 (ruling that conclusory allegations that the board "reviewed" statements did not show they were "directly responsible for the misstatements or omissions" as required). Plaintiffs thus fail to show that the Yahoo Directors' allegedly false statements excuse pre-suit demand.

### 2.  Failure to Prevent Alleged Misappropriation of Alipay

Plaintiffs also argue that pre-suit demand would have been futile because the Directors would have faced a substantial likelihood of liability for: (1) failing to act in the face of a known duty to act and to monitor material threats to Yahoo's most important asset, and (2) failing for years to accompany their statements about Yahoo's stake in Alibaba with disclosures regarding the regulatory risks to Yahoo's interest in Alipay or the threat that Ma would divest Alipay. See Opp. 13–25. Plaintiffs assert that the Yahoo Directors failed to exercise oversight over Alipay in five ways: (1) the Directors failed to prevent Ma from misappropriating Alipay; (2) the Directors willfully ignored "red flags" relating to Ma's alleged misappropriation of Alipay; (3) Yahoo's Audit Committee willfully ignored "red flags" relating to Ma's alleged misappropriation of Alipay; (4) the Directors could have prevented Ma's alleged misappropriation had they exercised their contractual right to veto any disposition of Alibaba's core assets; and (5) Yang knew that Ma planned to misappropriate Alipay but failed to act. See Compl. ¶¶ 1, 3, 16, 24, 95, 167–71, 209–14.

The allegation that the Directors failed to prevent harm to Yahoo is called a Caremark claim. Stone, 911 A.2d at 369–70 (discussing In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959 (Del. Ch. 1996)). Delaware courts have observed that this type of "failure of oversight" theory is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Caremark, 698 A.2d at 967. To excuse demand

United States District Court
For the Northern District of California

based on an asserted <u>Caremark</u> claim here, Plaintiffs must plead "with particularity that there were so-called 'red flags' that put the directors on notice of problems with their systems, but which were consciously disregarded." <u>See</u> <u>In re General Motors</u>, 2015 WL 3958724, at *16 & n.113 (citing <u>Stone</u>, 911 A.2d at 373).[7]  Delaware courts have noted that a director's duty to be informed does not "require directors to possess detailed information about all aspects of the operation of the enterprise" because that is "inconsistent with the scale and scope of efficient organization size in this technological age." <u>Caremark</u>, 698 A.2d at 971.

Plaintiffs' support their <u>Caremark</u> claim by alleging that the Yahoo Directors failed to prevent Ma from misappropriating Alipay when he unilaterally terminated Alibaba's VIE arrangement with Alipay in the first quarter of 2011. <u>See</u> Compl. ¶¶ 1, 3, 95, 196.  <u>Caremark</u> liability arises when there is a "sustained or systematic failure of the board to exercise oversight" in "bad faith." <u>Stone</u>, 911 A.2d at 369.  Here, Plaintiffs fail to adequately plead facts showing that the Yahoo Directors consciously and systematically ignored sustained signs of an impending misappropriation of Alipay.  Instead, Plaintiffs' view the alleged misappropriation of Alipay "with the benefit of hindsight, [and] the plaintiffs' complaint seeks to equate a bad outcome with bad faith." <u>Stone</u>, 911 A.2d at 373.  The "problem" with this type of "allegation is it turns the <u>Caremark</u> inquiry on its head.  Rather than plead particularized facts showing that the Board failed to implement or monitor [Yahoo's] internal controls and that, as a result, the Company suffered some loss, Plaintiffs' complaint relies solely on the loss as proof that the internal controls or oversight were inadequate." <u>In re Polycom, Inc. Deriv. Litig.</u>, 78 F. Supp. 3d 1006, 1015 (N.D. Cal. 2015).  The Court concludes that the hindsight logic employed by Plaintiffs here does not excuse demand.  <u>Id.</u>

Next, Plaintiffs allege that the contemplated PBOC regulations regarding foreign ownership of payment processing companies "serv[ed] as a red flag" that should have

---

[7]    To excuse demand based on an asserted <u>Caremark</u> claim, Plaintiffs must plead particularized facts to show that "(a) the directors utterly failed to implement any reporting or information system or controls; <u>or</u> (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations, thus disabling themselves from being informed of risks or problems requiring their attention." <u>Stone</u>, 911 A.2d at 370.  Because Plaintiffs concede that Yahoo implemented internal controls, <u>see</u> Compl. ¶¶ 55–56, the inquiry focuses on whether the Yahoo Directors deliberately failed to monitor their internal controls.  <u>See</u> <u>Stone</u>, 911 A.2d at 370.

United States District Court
For the Northern District of California

prompted Yahoo Directors, who were "following developments," to take action to prevent the misappropriation of Alipay.  See Opp. 15–18, 21.  According to Plaintiffs, the Directors should have acted after a September 2010 PBOC announcement stating that rules regarding foreign ownership would be issued at a future date:

> A revised version of the PBOC regulations was announced in April 2009.  It required that beginning in September 2010, non-financial institutions must obtain a License from the PBOC before engaging in payment services with China . . . .  The revised regulations conditionally eliminated any maximum amount of permissible foreign shareholding, but provided that the restriction on foreign shareholdings would be subject to rules that would be established by the PBOC in the future and that foreign shareholdings would be subject to the approval of the State Council.  The new regulations created a serious threat to Yahoo's interest in Alipay.  The Board, however, once again failed to discuss or consider, much less take action to address, the probable impact of these regulations or to strengthen Yahoo's bargaining position in the event transfer of foreign share ownership of Alipay would be required by the PBOC.

Compl. ¶ 80.  The flaw in Plaintiffs' argument is that by March 2012—one year after Alipay's alleged misappropriation—"[i]t remain[ed] unclear whether the transfer of the entirety of Alipay was even necessary, due to the as-yet-unclear permissible percentage of foreign ownership and the potential viability of the VIE alternative."  Id. ¶ 138.  In fact, the PBOC's draft regulations, see id. ¶¶ 77, 78, never became law.  See Yahoo MTD at 9.  The Court concludes that the Directors' course of action here, in the face of draft laws that may or may not have impacted the Directors' business, does not establish "knowledge that their conduct was legally improper."[8]  Wood, 953 A.2d at 141.

Next, Plaintiffs allege that the Yahoo Directors who served on Yahoo's Audit Committee willfully ignored "red flags" relating to Ma's alleged misappropriation of Alipay.  See Compl. ¶ 176–78.  The Complaint does not plead any facts about what the Audit Committee learned regarding any "red flags" relating to Alipay.  It is "contrary to well-settled Delaware law" to "infer that the directors had a culpable state of mind based on

---

[8]  Plaintiffs contend that it is "beside the point" that the PBOC regulations never were enacted.  See Opp. at 16.  The Yahoo Directors should have known, Plaintiffs allege, that Ma would unilaterally misappropriate Alipay.  Id.  One reason for this, according to Plaintiffs, is that Ma had "'constantly' approached Yahoo about repurchasing its stake" in Alibaba.  Id. at 17–18; Compl. ¶ 86.  But nothing about Ma's rebuffed attempts to buy Yahoo's shares of Alibaba in an arms-length, overt way conclusively signalled that Ma would covertly and unilaterally misappropriate Alipay.  See Yahoo Reply at 7.

United States District Court
For the Northern District of California

allegations that certain board members serve on an audit committee, and as a consequence, should have been aware of the facts on which the plaintiff premised" claims of wrongdoing. Wood, 953 A.2d at 142–43; accord VeriFone Sys., Inc. v. McGinn, No. 5:13-CV-02379-EJD, 2014 WL 3926565, at *8–9 (N.D. Cal. Aug. 7, 2014).

Plaintiffs also argue the alleged misappropriation of Alipay by Ma might have been prevented if Yahoo's Board had exercised its contractual right under the SPCA to veto any disposition of Alibaba's core assets. See Compl. ¶¶ 92, 95, 178; Opp. at 15. But Ma never presented the termination of the VIE to the Alibaba board: "Ma admits that he unilaterally terminated the VIE without the formal consent of Alibaba's board or Alibaba's major stakeholders as required by the SPCA." Compl. ¶ 95. He "made the decision based on his own wishes to get rid of the VIE, and to inform the other two shareholders that they would be entering into compensation talks." Ex. 4 at 3. Plaintiffs have failed to show that the Yahoo Directors acted in "bad faith" by failing to prevent Ma from acting unilaterally in this way.

Finally, Plaintiffs allege that demand is excused because Yang supposedly learned from Ma while serving on Alibaba's board that Ma intended to divest Alipay. See Compl. ¶¶ 9, 12, 79, 113, 120–21. Plaintiffs assert that "the Complaint alleges in detail what, how, and when Ma told the Board, through Yang, Yahoo's Director on the Alibaba Board, that [he] would not wait for the PBOC regulations to be finalized" before Ma acted. See id. But Plaintiffs' allegations lack any facts showing that Ma ever hinted, much less told Yang or the Alibaba board, that he would unilaterally terminate the VIE. The Complaint alleges that Ma said: "from the first day I started Alipay, I predicted the government would eventually control it." Id. ¶ 79. Not only did this prediction fail to come true, Ma conveyed no warning that he would act unilaterally in light of his fear.[9]  See Compl. ¶ 95.

_____

[9]  Plaintiffs now assert that Ma forewarned Yang about his impending misappropriation of Alipay. See Compl. ¶ 10. But the argument that Ma forewarned Yang is refuted by the same July 2011 China Entrepreneur Magazine ("CEM") article upon which the Complaint repeatedly relies. See Compl. ¶¶ 10, 22, 70, 85, 86, 89, 90, 113. The Complaint incorrectly asserts that Ma allegedly recounted a conversation with Yang about the termination of the VIE, and Yang "didn't give his opinion." Compl. ¶ 94. The CEM article, however, as Defendants point out, shows that Ma was recounting a conversation with Softbank's CEO, not Yang. Compare id. with Ex. 4 at 8–9. Plaintiffs admit this inaccuracy, see Opp. at 21 n.13, yet improperly continue to rely upon it. See Opp. at 21, 9.

United States District Court
For the Northern District of California

1    Furthermore, even if the Complaint adequately alleged Yang's foreknowledge of Ma's

2    intent and Yang's bad faith, Plaintiffs would still fail to meet their burden of showing that a

3    majority of the Yahoo Directors could not consider pre-suit demand because Yang's alleged

4    knowledge cannot be imputed to the other Yahoo Directors: "Delaware law does not permit

5    the wholesale imputation of one director's knowledge to every other for demand excusal

6    purposes." See Desimone v. Barrows, 924 A.2d 908, 943 (Del. Ch. 2007); see also In re Intel

7    Corp. Deriv. Litig. 621 F. Supp. 2d 165, 174–75 (D. Del. 2009) ("Delaware law is clear that

8    demand will not be excused when a Complaint includes particularized allegations for just one

9    member of the Board").[10]

10    Plaintiffs' Caremark claims do not excuse demand as to any Yahoo Director, much

11    less five of them. See Beam v. Stewart, 845 A.2d 1040, 1046 n.8 (Del. 2004) (demand is

12    excused if a majority of the board of directors, or one-half of an evenly-numbered board,

13    would have faced a "substantial likelihood" of personal liability by complying with demand

14    to pursue litigation). The Court thus concludes that demand is not excused on the basis of

15    Plaintiffs' oversight claims.

16    **D.    Board's Approval of the Framework Agreement Does Not Excuse Demand**

17    Plaintiffs also allege that pre-suit demand is excused because the Yahoo Directors'

18    approval of the Framework Agreement amounts to waste. See Compl. ¶¶ 204–08. If, as

19    here, a plaintiff challenges a business decision, the Aronson test requires the plaintiff to plead

20    facts creating a reasonable doubt that either "(1) the directors are disinterested and

21    independent" or (2) "the challenged transaction was otherwise the product of a valid exercise

22
23
24
25
26
27
28

---

[10]    Plaintiffs assert another theory of imputed knowledge—the so-called "core operations inference"—to argue that Yang's alleged foreknowledge of the misappropriation can be imputed to the other board members given the importance of Alipay to Alibaba. See Opp. at 20 n.11. The core-operations inference is applied in securities cases and permits courts to infer that corporate executives are aware of "facts critical to a business's core operations or an important transaction generally [which] are so apparent that their knowledge may be attributed the company and its key officers." South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 782–83 (9th Cir. 2008). But this doctrine has no application in derivative litigation. See In re Accuray, Inc. S'holder Deriv. Litig., 757 F. Supp. 2d 919, 928 (N.D. Cal. 2010) ("[A] plaintiff must allege more than that directors should have known or must have known about matters relating to the corporation's 'core business.'"). Even in securities cases, the core-operations inference only allows a court to infer executives' knowledge about their own company's core operations—see South Ferry, 542 F.3d at 782–83—not knowledge regarding the operations of a subsidiary belonging to a separate, foreign company, as is the case here.

17

United States District Court
For the Northern District of California

1    of business judgment." Wood, 953 A.2d at 140 (quoting Aronson, 473 A.2d at 814 (Del.

2    1984)).

3         Plaintiffs focus on Aronson's second prong, see Opp. at 26,[11] and thus their arguments

4    must overcome the business judgment rule, which presumes that decisions are "made in good

5    faith and in the honest belief that the action taken was in the best interests of the company."

6    Aronson, 473 A.2d at 814.  To meet this burden, the Plaintiffs must plead sufficient

7    particularized facts to "raise (1) a reason to doubt that the action was taken honestly and in

8    good faith or (2) a reason to doubt that the board was adequately informed in making the

9    decision."  In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 808, 824 (Del. Ch.

10   2005) (quoting In re Walt Disney Co. Derivative Litig., 825 A.2d 275, 286 (Del. Ch. 2003)).

11   "[A] decision made by a loyal and informed board will not be overturned by the courts unless

12   'it cannot be attributed to any rational business purpose.'"  Cede & Co. v. Technicolor, Inc.,

13   634 A.2d 345, 361 (Del. 1993) (quoting Sinclair Oil Corp. v. Levien, 280 A.2d 717, 720

14   (Del. 1971)).

15        Here, Plaintiffs argue that the Framework Agreement was on terms "far worse than

16   Yahoo could have achieved" had it "not ceded critical leverage to Ma."  See Compl. ¶¶ 22,

17   27, 125–31, 134–35; Opp. at 10, 11, 26.  The Delaware Court of Chancery has expressly

18   rejected the argument Plaintiff advances here:

19            Plaintiff's refrain that the members of the Board should have exercised the
             Company's leverage to secure a more favorable agreement . . . is precisely the
20           type of "Monday morning quarterbacking" that this Court routinely rejects as
             insufficient to establish demand futility.  In the absence of well pleaded
21           allegations of director interest or self-dealing, failure to inform themselves, or
             lack of good faith, the business decisions of the board are not subject to
22           challenge because in hindsight other choices might have been made instead.

23   Teamsters Union 25 Health Servs. & Ins. Plan v. Baidera, 119 A.3d 44, 64–65 (Del. Ch.

24   2015) (internal quotations and citations omitted).

25

26        [11]   The Opposition abandons any argument that the Yahoo Directors were self-interested
     in the Framework Agreement or beholden to anyone who was.  Compare Yahoo MTD 11–13.
27   Plaintiffs have thus waived their arguments as to disinterestedness and independence.  See Personal
     Elec. Transports, Inc. v. Office of U.S. Tr., 313 F. App'x 51, 52 (9th Cir. 2009) (affirming district court
28   holding that a party waived an argument by failing to raise it in opposition to motion to dismiss); In re
     Polycom, 78 F.3d at 1014 & n.6 (failure to respond to opening brief argument constitutes waiver).

United States District Court
For the Northern District of California

Furthermore, Delaware courts have consistently held that board decisions to litigate or abstain from litigation by granting releases are presumed valid unless the release serves no rational corporate purpose. White v. Panic, 783 A.2d 543, 553–54 (Del. 2001) ("courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, ex post, to judge appropriate degrees of business risk"); Brehm, 746 A.2d at 264 (courts do not "measure, weigh, or quantify directors' judgments"); see also Zucker v. Andreessen, No. 6014-VCP, 2012 WL 2366448, at *8–9 (Del. Ch. June 21, 2012) (challenged release did not excuse demand); In re HP Deriv. Litig., No 5:10-cv-3608 EJD, 2012 WL 4468423, at * (N.D. Cal. Sept. 25, 2012). Plaintiffs do not point to any facts showing that the Framework Agreement could have been obtained without the release. The Complaint and judicially noticeable documents establish that Yahoo's release of Alibaba and its board members yielded benefits, including resolution of the uncertainty relating to Alipay's restructuring and Yahoo's pro rata share of a potential $2–6 billion. Yahoo Reply at 12; see In re HP, 2012 WL 4468423, at *7 (finding release had some value where it protected against the expense of litigation and negative publicity resulting from having to defend against claim).

Plaintiffs thus fail to show that the release achieved "no corporate purpose" or that "the corporation received no consideration at all" in exchange. White, 783 A.2d at 554 & n.36. Waste cannot arise if there "is any substantial consideration received by the corporation." White, 783 A.2d at 554 & n.36; Disney, 906 A.2d at 74 (stating that pleading waste falls under an "onerous standard"). The Plaintiffs' disagreement with the Yahoo Directors' decision does not show waste, which "'arise[s] only in the rare, unconscionable cases where directors irrationally squander or give away corporate assets.'" Disney, 906 A.2d at 74 (quoting Brehm, 746 A.2d at 263).[12] The Court concludes that Plaintiffs have failed to raise doubt that the Yahoo Directors' approval of the Framework Agreement was a valid

---

[12] Finally, Plaintiffs claim that the Yahoo Directors were uninformed at the time they approved the Framework Agreement. See Opp at 26. This claim, however, is not supported by any particularized facts alleged in the Complaint. See J.P. Morgan, 906 A.2d at 824 (no facts alleged showing that board "was not provided with information from which it could make a proper decision"); In re HP, 2012 WL 4468423, at *9 ("Plaintiffs fail to plead any facts raising a reasonable doubt that the Board acted on an uninformed basis").

1    exercise of business judgment, and thus demand is not excused on this basis or on the basis

2    of any other ground that Plaintiffs have advanced here.

3    **IV.    MOTION TO DISMISS FOR FAILURE TO STATE CLAIMS FOR BREACH OF FIDUCIARY DUTY AND WASTE OF CORPORATE ASSETS**

4            Defendants also move to dismiss the Complaint for failure to state breach of fiduciary

5    duty and corporate waste claims.  <u>See</u> Director MTD.  The Court concludes that Plaintiffs

6    have failed to state claims for breach of fiduciary duty and corporate waste, and GRANTS

7    Defendants' motion for the following reasons.

8            **A.    <u>Legal Standard</u>**

9            Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for

10   failure to state a claim upon which relief may be granted.  Dismissal may be based on "the

11   lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

12   legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  For

13   purposes of evaluating a motion to dismiss, a court "must presume all factual allegations of

14   the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."

15   <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  A complaint must plead

16   "enough facts to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 129 S.

17   Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A

18   claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

19   reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  "Courts

20   must consider the complaint in its entirety, as well as other sources courts ordinarily examine

21   when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into

22   the complaint by reference, and matters of which a court may take judicial notice."  <u>Tellabs</u>

23   <u>v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

24           **B.    <u>Plaintiffs' Claim For Breach of Fiduciary Duty</u>**

25           Plaintiffs assert that Defendants breached their fiduciary duty by (1) disseminating

26   false and misleading information and (2) consciously disregarding their duty to oversee and

27   preserve Yahoo's interest in Alipay.  <u>See</u> Compl. ¶¶ 167–172, 186; Opp. at 27.  Plaintiffs'

28   claim here repeats verbatim the underlying claim for breach of fiduciary duty that forms the

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   basis of their demand futility claim, discussed above, and the Court's analysis there applies

2   with equal force here.  See Director MTD at 2–8; Opp. 27–29.  Plaintiffs' failed to show that

3   the Yahoo Directors' alleged breach of fiduciary duty—caused by their alleged dissemination

4   of false and misleading information and their lack of oversight—excused demand; for many

5   of the same reasons, the Court concludes that Plaintiffs fail to state a claim that the Directors

6   breached their fiduciary duty by disseminating false and misleading information and failing

7   to oversee Yahoo's internal functions.  See Fed. R. Civ. P. 12(b)(6).

8   **C.      Plaintiffs' Claim For Waste of Corporate Assets**

9          To state a claim for corporate waste, a plaintiff must show that "the board's decision

10  was so egregious or irrational that it could not have been based on a valid assessment of the

11  corporation's bests interests."  White, 783 A.2d at 554 n.36.  This requires the plaintiff to

12  demonstrate that "an exchange was so one-sided that no business person of ordinary, sound

13  judgment could conclude that the corporation has received adequate consideration."  Walt

14  Disney, 906 A.2d at 74.  This often entails "a transfer of corporate assets that serves no

15  corporate purpose, or for which no consideration at all is received."  Brehm, 746 A.2d at 263.

16  A "mere disagreement cannot serve as grounds for imposing liability based on

17  alleged . . . waste."  Id. at 266.  To hold "otherwise would invite courts to become super-

18  directors, measuring matters of degree in business decision making."  Id.  Thus, a corporate

19  waste claim fails "if there is any substantial consideration received by the corporation,

20  and . . . there is a good faith judgment" that under the circumstances the transaction was

21  worthwhile.  White, 783 A.2d at 554.  This is so even if the transaction appears, with

22  hindsight, to be unreasonably risky.  Id.

23         Plaintiffs allege that the Yahoo Directors "irrationally squandered Yahoo's assets" by

24  failing to obtain "adequate consideration for Yahoo's interest in Alipay," which resulted in a

25  waste of corporate assets.  Opp. at 29.  Plaintiffs' claim fails for three reasons.

26         First, Plaintiffs' argument is based on an alleged inaction—that the Directors failed to

27  obtain "adequate consideration" for Alipay; but a claim for waste must be predicated on an

28  affirmative board decision.  Brehm, 746 A.2d at 263; Citigroup, 964 A.2d at 136; Laties v.

United States District Court
For the Northern District of California

1  Wise, No. Civ.A. 1280-N, 2005 WL 3501709, at *2 (Del. Ch. Dec. 14, 2005) (rejecting

2  waste claim where there were "no allegations (let along particularized factual allegations)

3  that the directors made a definitive decision").

4          Second, Plaintiffs' waste claim assumes that Alibaba received $46 million for the

5  transfer of Alipay.  See Opp. at 28, 29.  That assumption is refuted by the Framework

6  Agreement, which contractually entitles Alibaba to between $2 billion and $6 billion in a

7  future liquidity event for Alipay, along with other considerations.  See Compl. ¶ 127; Exs. 5

8  and 6.  It appears Plaintiffs borrowed its $46 million allegation from the Class Action

9  complaint.  See Ex. 11 ¶ 62.  That allegation shows that, when asked about the $46 million

10  figure, Ma denied the accuracy of the figure: "You'd really believe I'd be so stupid as to sell

11  Alipay to myself at such a low price?"  See Ex. 11 ¶ 62.[13]  Plaintiffs also fail to show that any

12  Yahoo Director was informed about the $46 million amount.

13          Third, Plaintiffs' conclusory allegation that the Yahoo Directors "irrationally

14  squandered" the value of any claims that Yahoo might have had against Ma fails to show that

15  the Framework Agreement "was so one-sided that no business person of ordinary, sound

16  judgment could conclude that the corporation has received adequate consideration."  Walt

17  Disney, 926 A.2d at 74 (quotations and citation omitted).  Plaintiffs do not dispute that the

18  release netted Yahoo consideration without which Yahoo would not have obtained its pro

19  rata share of the $2 billion to $6 billion that Alibaba stood to receive following a liquidity

20  event for Alipay.  See Compl. ¶ 127; Exs. 5 and 6.  Moreover, a "board's decision not to seek

21  contribution from persons [allegedly] involved in the conduct underlying a suit against the

22  corporation is a business decision within the discretion of the board."  White, 783 A.2d at

23  553–55 & n.28.

24          The Court thus concludes that Plaintiffs fail to plead facts showing that the decision

25  approving the Framework Agreement amounts to corporate waste.  See Fed. R. Civ. P.

26  _____

27          [13]      The text of that article is available online.  See Jack Ma on the State of Alibaba and Alipay
    (June 14, 2011), available at http://english.caixin.com/2011-06-14/100269326.html?p0 (last visited
28  December 8, 2015).  In the Class Action, this Court took judicial notice of the article.  Director Reply
    (dkt. 80) at 9 n.4.

12(b)(6); <u>see also</u> <u>In re Google, Inc. S'holder Deriv. Litig.</u>, No. 11-4248 PJH, 2012 WL 1611064, at *12 (N.D. Cal. May 8, 2012) (dismissing waste claim where plaintiffs had not "alleged facts that rise to the level of establishing an exchange that is 'unconscionable'" and pleaded "no allegations that the alleged waste amounts cannot be attributed to any rational business purpose").

## V.    CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish demand futility and have failed to state claims upon which relief can be granted for breach of fiduciary duty and corporate waste.  The Court thus GRANTS Defendants' Motions to Dismiss and ORDERS that this action be dismissed WITH PREJUDICE.[14]

**IT IS SO ORDERED.**

Dated: December 23, 2015

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

---

[14] Any further amended complaint would have to plead demand futility against Yahoo's current board of directors, <u>see</u> <u>Braddock v. Zimmerman</u>, 906 A.2d 776 (Del. 2006), and demand plainly could not be excused given that, with the exception of James, all of Yahoo's current directors joined the board after the events at issue in this litigation.  <u>See</u> Ex. 14 (dkt. 70-14).  The Court concludes that Plaintiffs have not identified any facts that indicate amendment could cure the defects in the Complaint.  <u>See</u> <u>In re Silicon Graphics, Inc. Sec. Litig.</u>, 183 F.3d 970, 991 (9th Cir. 1999) (affirming dismissal of derivative action without leave to amend where defective futility allegations could not be cured).

United States District Court
For the Northern District of California